[No. 4255.]

## The Union Gold Mining Co. v. Crawford.

1. Practice—Pleading—Motion to Make More Specific.

In an action against a mining company for damage for personal injuries alleged to have been caused by an ore car falling down the shaft in which plaintiff was at work it was not error to deny defendant's motion to make the complaint more specific by alleging whether or not the person in charge of the car was a servant or employee of defendant, as that fact was known by defendant. And where upon the trial it was shown that the person in charge of the ore car was an employee of defendant's lessee it was immaterial that the complaint did not allege whether or not he was an employee of defendant.

2. Practice—Instructions.

It is not error to refuse to give an instruction asked if it is in substance given in another instruction.

3. Same—Reading from the Pleading.

The fact that the court in its instructions read certain allegations from the complaint and answer is not errorneous if thereby he correctly stated the issues to the jury.

4. Instructions—Negligence.

In an action for damage for injuries alleged to have been caused

by defendant's negligence, an instruction that directed the jury to find for plaintiff if they should find that the injuries were "occasioned" by defendant's negligence is not misleading because the court used the word "occasioned" instead of "caused."

5. SAME—MEASURE OF DAMAGES.

In an action for damage for personal injuries an instruction that told the jury that in estimating plaintiff's damages they "should also consider the nature of the injuries suffered as to whether they are likely to prove permanent, or temporary only," is not objectionable on the ground that the use of the word "likely" permitted and encouraged the jury to indulge in conjecture and speculation in determining the extent of plaintiff's injuries.

6. NEGLIGENCE—MINES AND MINING.

Where a mining company leased the different levels of its mine, the lessees delivering their ores to the company at the shaft, who hoisted it to the surface for them, and a person working for the company at the bottom of the shaft was injured by an ore car escaping from an employee of a lessee in one of the levels and falling down the shaft, and the accident was caused by reason of the tracks on which the ore cars ran being laid with two much grade and because no barrier was placed at the shaft to stop the cars and prevent them from running into the shaft, and it was shown that the level was in the same condition when turned over to the lessee as when the injury occurred, the company was responsible for the condition of the level and was liable for injuries caused by the negligence in maintaining the track with an excessive grade and in not providing a sufficient barrier to stop the cars at the shaft.

7. SAME—PROXIMATE CAUSE.

Where a mining company leased one of the levels of its mine with the track for running ore cars from the face of the mine to the shaft where the ore was delivered to the company and by it hoisted to the surface, and the track was constructed on such grade that a loaded car would of its own motion run down the track to the shaft, and no barrier was provided to stop the cars and prevent them from running into the shaft, and a car escaped from an employee of the lessee and ran into and fell down the shaft injuring an employee of the company working at the bottom of the shaft, the proximate cause of the injury was the negligence of the mining company in maintaining the track with an excessive grade and failing to provide a sufficient barrier to stop the cars and prevent them from running into the shaft.

8. NEGLIGENCE—PERSONAL INJURIES—EXCESSIVE DAMAGE.

The appellate court is not warranted in disturbing a verdict for damage for personal injuries on the ground that it is excessive unless

the amount allowed is so manifestly disproportionate to the injury as to make it apparent that the jury were influenced by prejudice, misapprehension or by some corrupt or improper consideration.

9. Same.

Where in an action for damage for personal injuries, the evidence shows that plaintiff's injuries had caused the amputation of one leg, the loss of the use of two fingers and that his skull was fractured, a verdict for $15,000 is not excessive.

*Appeal from the District Court of El Paso County*

Messrs. Wolcott, Vaile & Waterman and Mr. Wm. M. Field for appellant.

Mr. John K. Vanatta for appellee.

Mr. Justice Steele delivered the opinion of the court.

The injuries to the appellee occurred on the 18th of September, 1898, while he was working at the bottom of the shaft of the Orpha May mine, the property of the appellant. The appellee is a miner, and was employed by the appellant. A car loaded with ore, in charge of an employee of a lessee of the fourth level of the mine, fell from the fourth level to the bottom of the shaft, a distance of about seven hundred feet. A heavy canopy had been built over the place where they were working, for the protection of the miners. The momentum of the falling car and ore was so great that the canopy was broken, two of the miners were killed and the appellee was seriously injured. In the complaint the injuries sustained by the appellee are described as follows: "That at the time the car fell into the bottom of said shaft, as aforesaid, it struck the plaintiff so as that his right leg was crushed in such manner as that it was necessary to amputate

33

the same; that the plaintiff's left hand was injured so as that two of the fingers on said hand were, and are, rendered useless to this plaintiff, and he was injured in and about the head in such a manner as that his skull was fractured."

The levels of the mine were worked by lessees under separate leases. The company was engaged at the time in question in sinking the shaft. By an agreement with the lessees, the company was to take the ore at the mouth of the level and hoist it to the surface, and to do this the levels were so arranged that the ore cars could run into the hoisting cage. The entrance to level No. 4 was protected by an iron chain, one end of which was fastened to the timbers of one side of the level, a hook was fastened to the other side and so arranged that a link of the chain could be thrown over the hook, thus closing the entrance. The purpose of this chain barrier, say counsel in their brief, was to protect the men from carelessly or inadvertently stepping into the shaft as they were working in the level near it. Henry Funk, an employee of the lessee of the fourth level in question, was engaged in tramming ore from a stope in the level to the shaft. Funk testified: "I was tramming there at the time this accident happened. I had filled the car and was standing between the car and a pile of ore and was shoveling up around the plat preparatory to filling up the next car, and when I turned to take the car away it was already gone. I started after the car, but my candle went out, and I followed on the best I could, and in a few seconds the car struck at the shaft. * * * The car was supposed to be a two thousand pound car and it was full. The car started of its own accord; it was gone before I was aware of it. When it started it was a hundred or·

a hundred and fifty feet from the shaft. Nobody told me the grade of this track. I could perceive there was a grade there by going over it; I knew it was there."

The witness Leffingwell, a civil and mining engineer, testified that he had made measurements in the level after the accident. He said: "The level falls toward the shaft to the amount of two feet and one-half in its length, which is one hundred and twelve and a half feet from the shaft. From a point five feet from the face to a point twenty-five feet from the face, a distance of twenty feet, the track falls nine inches in elevation, that is, there is a fall of nine inches in twenty feet. A loaded car will not start of its own accord on a grade which is only six or eight inches to a hundred feet; it would gradually decrease in speed and stop."

Herbert Starkweather, a witness for the defendant, testified: "I was employed by the Union Gold Mining Company as superintendent of the Orpha May mine and other properties. Clements took possession of a portion of the level a short time before the accident. The company operated it during the month of February and, I think, before that time. There had been no change in the condition during the time I was in charge of it. I took charge of the property the 1st of February. There were no changes made by him in the level (the lessee, Clements, in the 4th level). He was working above that level; he had nothing to do below. He took the ore out through the level, and the level was in the same condition, as far as I know, when it was leased to him by the company. After the accident I took a man down to the fourth level of the Orpha May mine. I wished to ascertain how the car got away from the man. I took

the car down and had him load the car, and ran it both ways several times over the track. It was with some difficulty we started the loaded car at the immediate point where we loaded it but after it was started it ran readily down there to the mouth, but there was no trouble at all for a man to control the running of the car. The track was not straight; it followed the vein, and there were short crooks and curves in the track. I did not block the car, because I wanted to see if it would start or not with the jarring of the car. I never learned of any difficulty in operating loaded cars upon this track. There was quite a raise, as the surveyor testifies, at this one point, and beyond that it was level or nearly so, possibly a slight decline, for a long distance. The level is not constructed at any excessive grade. This one particular point the grade, as the surveyor testifies, was steeper than at any other point."

"Q. Was steeper than you find in a great many places? A. Steeper than usual, but there was no difficulty to a man running a car over it with any ordinary precaution."

"We started a loaded car and an empty one. The empty car would not go to the shaft, but the loaded car did. It did not run very fast, but it ran enough to go over the grade into the shaft if we had allowed it; we stopped it before it got to the shaft. The loaded car ran about as fast as a man would ordinarily walk."

During the course of the trial testimony was received over the objection of the defendant, and exceptions were saved, but we regard the errors, if any, as unimportant and not prejudicial, and they will not be considered.

A motion was interposed by the defendant to have

the complaint made more speciffc. The motion was granted in part, and the defendant alleges error in the court in not requiring the complaint to be made specific in every particular designated by the defendant. By this motion the defendant sought to have the plaintiff allege whether the person who had charge of the car in the fourth level was a servant or employee of the defendant. It was not error to deny this motion; the defendant knew whether Funk was an agent or employee of the defendant, and we think it is not material in this case inasmuch as it was shown upon the trial that the person in charge of the car was an employee of a lessee of the fourth level.

The trial resulted in a verdict for the plaintiff in the sum of fifteen thousand dollars. The defendant appealed to this court.

The principal errors alleged and discussed are the refusal of the court to give certain instructions offered by the defendant and the giving of certain instructions over the objection of the defendant.

Request No. 1 is an instruction concerning the preponderance of the evidence and was fairly covered by instruction No. 8 given.

Request No. 2 contains a definition of negligence. The court, in another instruction, gave a definition of negligence approved by leading authorities.

Request No. 4 is in reference to an intervening cause, and, we think, is not applicable to this case.

Requests Nos. 7 and 8 were given in substance in instruction No. 9.

Request No. 11 directs the jury to disregard the testimony of the witness Leffingwell because it was stricken. The testimony was not stricken.

Requests Nos. 11 and 12 charge that the defend-

ant was not guilty of negligence, and were properly refused.

Request No. 14 states that the company is not responsible for the negligence of Funk, the person who had charge of the car; and this, in substance, was given by the court.

Request No. 15 was to the effect that the defendant did not construct the track in the level, and that it knew nothing of its condition at the time plaintiff was injured. This instruction was properly refused.

No. 16 is an instruction in effect that the defendant is not guilty of negligence, and was properly refused.

No. 17 was a request for the jury to return a verdict for the defendant; and this was properly refused.

In instruction No. 1 given, the court read to the jury certain allegations of the complaint and answer concerning the disaster, and the defendant objected to the court's thus reading from the pleadings but we think the court correctly stated the issues raised, and that no error was thus committed.

If the case was to be submitted to the jury, instruction No. 2 was properly given. It is objected that the court in instruction No. 2 failed to carefully explain the meaning of the word "proximate," but we think the jury was not misled by the giving of this instruction.

In instruction No. 4 the court gave the jury a definition of negligence. Counsel object that this is an incorrect definition of negligence, and was improperly given. This is the deffinition of negligence adopted by Judge Cooley, and is quoted with approval by text-writers; and while it may not be in every partictlar absolutely correct, we are not dis-

posed to question it and do not think the court erred in giving it.

No. 5 is objected to because the judge directed the jury to find for the plaintiff if it should find that the injuries were occasioned by the negligence of the defendant, and it is insisted that by the use of the word *occasioned* instead of the word *caused*, "the jury were left without warning, guidance, or limitation in fixing liability for appellee's injury." The judge undoubtedly used the word "occasioned" as the synonym of "caused," and we are satisfied that the jurors were not thereby misled. It is also urged that this instruction should have included the question of assumption of risk, but the court properly instructed the jury upon this question in instruction No. 10.

In instruction No. 6 the jury was told that in estimating the plaintiff's damages it "should also consider the nature of the injuries suffered as to whether they are likely to prove permanent, or temporary only." The following appears in the bill of exceptions: "The defendant objected to the giving of instruction No. 6 of the instructions given by the court to the jury, and especially objected to the giving of that portion thereof as follows: 'as to whether they are likely to prove permanent, or temporary only;' and before said instruction was given to the jury the defendant objected to the use of the word 'likely' in connection with the words 'to prove permanent, or temporary only.'" Although much space is devoted to a discussion of questions raised here for the first time, we shall consider only the objection called to the attention of the trial court. It is insisted that by the use of the word "likely" "the jury are permitted and encouraged to indulge in conjecture and speculation in determining the extent of appellee's injuries, that the

law forbids this and requires that their finding as to the future or continuing consequences shall be confined to such only as the evidence shows to be reasonably certain to result." We do not think the jury was encouraged to indulge in conjecture by this instruction. It was told in assessing damages, to consider the nature of the injuries as to whether they were likely to prove permanent, or temporary only. The definition of "likely" given by the Standard dictionary is "in all probability." There is always more or less conjecture as to whether injuries are permanent or temporary, and the determination of the question is usually based upon opinion testimony; and while we cannot recommend "likely" or "in all probability" as interchangeable or synonymous with the words "reasonably certain," the difference is but slight, and we do not feel warranted in reversing the case because of the failure to use the words "reasonably certain" in this instruction. Moreover, the plaintiff's injuries consisted mainly in the loss of his leg. This is a permanent injury. And having seen the condition of the plaintiff, the jury did not indulge in speculation as to the permanent injury of the leg.

The appellant contends: 1. That there was no negligence on the part of the defendant. 2. That the conditions existing in the fourth level were not the proximate cause of the appellee's injury. 3. That the negligence, if any, which caused appellee's injury was the negligence of an independent contractor. 4. That the injuries were caused by the negligence of a fellow servant of the appellee. 5. That the appellee knew the condition of the fourth level when he accepted employment from appellant, and that he assumed the risk of any injury which he might suffer resulting from the known condition.

The determination of these questions will dispose of all other objections to instructions.

In reference to the fourth and fifth it is sufficient to say that the injuries were not caused by the negligence of a fellow servant, and that the appellee did not know the condition of the fourth level, or, rather, that there was no testimony to show that the appellee knew of the condition of the fourth level.

The law required the company to provide for its employees a reasonably safe place in which to perform their work.

The testimony is silent as to who constructed the tram in the level or who erected the barrier at its mouth. The testimony shows, however, that the level when turned over by the company to the lessee was in the same condition in which it was in the day of the accident. The company, therefore, is responsible for the condition of the level. The testimony of the witness Leffingwell as to the grade of the track in the level is not disputed, in fact defendant's witness corroborates him in saying that the grade was unusual in some places. According to Leffingwell's testimony, the distance from the point where the ore was loaded on the car to the shaft is about one hundred twelve and one-half feet. The level falls toward the shaft to the amount of two and one-half feet in its length. The grade is greater in some places than in others. "From a point five feet from the face, to a point twenty-five feet from the face, the track falls nine inches in elevation." The experiments made by the defendant's witnesses demonstrated that a loaded car, if started would run into the shaft. The witness Funk testified that the car which was precipitated into the shaft was not started or pushed by him. The facts are that

whether the loaded car was started by human agency or by the force of gravity, it started, and, there being no barrier of sufficient strength to stop it, the car and contents were thrown into the shaft and fell to the bottom, killing two of appellant's employees and seriously injuring the appellee. We are of opinion that the company, in maintaining a track with the excessive grade which is shown to have existed in this level and in not providing a barrier of sufficient strength to resist the force of a loaded car of ore running upon the track, was guilty of culpable negligence. The act of maintaining a track with the excessive grade would not alone render the company liable for the injury in this case. A runaway car could be stopped by a sufficiently strong barrier at the mouth of the level. The barrier provided was not for the purpose of preventing a car from running into the shaft, but to prevent the workmen from walking into it. The most ordinary foresight and prudence, it would seem to us, would have dictated some suitable protection at the mouth of the level The most cautious man might lose control of a loaded car in a level such as the fourth level of this mine, and there was a breach of the positive duty of the company in not guarding against such an occurrence.

But counsel contend, assuming the company to have been negligent, that the conditions existing in the fourth level were not the proxima'e cause of appellee's injuries and that the negligence which caused appellee's injuries was that of an independent contractor. We shall consider these as one proposition. Wharton, at section 134 of his work on Negligence, says: "I am negligent on a particular subject matter. Another person, moving independently,

comes in, and either negligently or maliciously so
acts as to make my negligence injurious to a third
person.   If so, the person so intervening acts as a
non-conductor, and insulates my negligence, so that
I cannot be sued for the mischief which the person
so intervening directly produces." This section from
Wharton is quoted by counsel in their brief as sus-
taining the position that an independent contractor
had caused the accident, and that the company, for
this reason, was not liable.   Accepting this as a cor-
rect statement of the law, it cannot be applied to the
facts in this case.   The facts are that this company
was engaged in sinking a shaft on its Orpha May
mine; that it employed the plaintiff to work in the
bottom of the shaft; that it had leased the fourth
level of its mine, about seven hundred feet above
the place where the plaintiff was working, with the
track as therein constructed; that the company, as
part of the conditions of the lease was to hoist the
ore from the mouth of this level to the surface; that
the track in the level was laid upon an excessive
grade; that no barrier was erected at the mouth of
the level to prevent the cars from running into the
shaft; that a loaded car weighing nearly a ton fell
down the shaft and upon the appellee; that as found,
by the jury, the employee of the lessee could not, by
the exercise of ordinary care, have managed the car
with safety to the company's employees; that the car
escaped from the employee of the lessee, and that he
was unable to prevent its escape by the exercise of
ordinary care.   Here the causal connection was not
broken.

There was no interposition of independent respon-
sible human agency.   No third person, moving inde-
pendently, came in, and either negligently or mali-

ciously so acted as to make the negligence of the company injurious; but the injury was the natural consequence of the wrongful act of the company, and "was such as might or ought to have been foreseen, in the light of the attending circumstances."

Mr. Justice Strong, in *Milwaukee, etc., Company v. Kellogg*, 94 U. S. 469, has this to say: "The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market-place. 2 W. Bl. Rep. 892. The question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted the rule is difficult of application. But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

This court, in *Colorado Company v. Rees*, 21 Colo. 445, quotes with approval the following: "Negligence may, however, be the proximate cause of an

injury of which it is not the sole or immediate cause.
If the defendant's negligence concurred with some
other event (other than the plaintiff's fault) to pro-
duce the plaintiff's injury, so that it clearly appears
that but for such negligence the injury would not
have happened, and both circumstances are closely
connected with the injury in the order of events, the
defendant is responsible, even though his negligent
act was not the nearest cause in the order of time."
And the following:   "The act of a third person, in-
tervening and contributing a condition necessary to
the injurious effect of the original negligence, will not
excuse the first wrongdoer, if such act ought to have
been foreseen.   The original negligence still remains
a culpable and direct cause of the injury.   The test
is to be found in the probable injurious consequences
which were to be anticipated, not in the number of
subsequent events and agencies which might arise."
In the case cited, the defendant was the owner and
had full control of an elevator operated for the use
of its tenants and patrons.   A trespasser opened the
door of the elevator cage and left it standing open.
The elevator car was at the top of the building, the
open door on the ground floor.   The plaintiff, be-
lieving the car was at the ground floor, walked
through the door and fell to the basement.   The
court said:   "It was the duty of the defendant, in op-
erating the elevator in question, to exercise the ut-
most care and diligence, and to provide and maintain
proper and secure fastenings to the doors opening
into the elevator way that could not be opened or
controlled from the outside.   Therefore the court
was correct in saying that it was 'wholly immaterial
whether such door was opened by some third person
or not, provided that such accident could not have

happened but for the negligence of the defendant in keeping and maintaining the fastenings to its elevator door;' for, had it performed its duty in the premises, such interference by a third person would have been impossible; hence its negligence necessarily concurred in, and constituted an essential factor in, causing the injury. It is well settled by the adjudged cases where an injury is the result of the combined negligence of the defendant and the negligent or wrongful act of a third person, for whose act neither the plaintiff nor the defendant is responsible, the defendant is liable, when the injury would not have happened except for his negligence."

Guided by these authorities, we can arrive at no other conclusion than that the proximate and efficient cause of the injury was the negligence of the defendant, and that it should be held liable to the plaintiff for the damages shown to have been sustained.

It is urged that the verdict is excessive. Counsel say that fifteen thousand dollars loaned at eight per cent interest will yield the plaintiff an income in excess of the amount he has ever earned or is able to earn, without touching the principal. This without the slightest physical or mental exertion. This company, by its culpable and wanton negligence, has made a physical wreck of its employee, and it would now enforce this cruel rule against him by showing that the amount of the verdict at interest will yield him more than he could earn if he were in perfect physical condition. But if his damages were measured by this unjust rule, the verdict is not excessive. In the first place he can not, "without making the slightest mental or physical exertion," cause his capital to yield eight per cent interest. After the pay-

ment of expenses and taxes, he will do well if he receives a net income of four per cent on his money. But little more than half of the amount he could earn before the injury. So that, eliminating entirely the question of damages for the loss of his leg, the damages for the fracture of his skull, the amount of the verdict, if placed at interest, will return to him barely sufficient to live upon. The record does not disclose the exact nature of appellee's injuries. The complaint alleges that the leg was amputated; the testimony of the plaintiff in the bill of exceptions is that the foot was amputated. During the oral argument the attention of counsel for appellee was directed to these apparently conflicting statements, and he asserted that the complaint correctly set forth the extent of the injuries, and that the leg was amputated above the knee. But whether the leg was amputated above or below the knee, the jury saw the physical condition of the plaintiff, and, being properly instructed awarded him the damages. "The law does not warrant us in disturbing the verdict where no important error has occurred on the trial, unless the amount of damages allowed is so manifestly disproportionate to the injury received as to make it apparent that the jury were influenced by prejudice, misapprehension, or by some corrupt or improper consideration." *Wall v. Livesay*, 6 Colo. 474.

For the reasons given, the judgment is affirmed.

*Affirmed.*

### On petition for rehearing.

*Per Curiam.*—In the petition for rehearing, counsel charge that we have determined "the nature and extent of appellee's permanent injury from matters *de-*

*hors* the record, and inconsistent with and, to a cer-tain extent, contradictory to the evidence preserved in the record."

Counsel are mistaken. At the trial, the plaintiff testified: "My condition was, that I had one foot crushed in such a way that it had to be amputated; I had thirteen cuts on my head, and my skull was frac-tured four inches, here. I have lost the use of that finger, and there is a cut across my knee that there was fifteen stitches taken in. * * * My limb, from some unknown cause, gets very sore, and I cannot work on it; in fact, I am not able to work, anyhow. When trying to rise suddenly, or turn around, I become dizzy, and have to get hold of something to stand up; otherwise I would fall over, and I have fallen over several times." It was from this testimony that we determined the nature and extent of plaintiff's injuries, and not from the allega-tions of the complaint and the statements of coun-sel. We do not regard a verdict for $15,000 as dam-ages for injuries such as the plaintiff by his testimony is shown to have sustained, so excessive as to war-rant the presumption that it was the result of op-pression or prejudice.

In the opinion it is stated that, "the plaintiff's in-juries consisted mainly in the loss of his leg." This is, perhaps, an inaccurate description of the plaintiff's injury, but our judgment that the verdict was not excessive was based upon the testimony of the plaintiff.

The petition for rehearing is denied.