†THE HON. WILLIAM L. HOLLOWAY,
THE HON. ALBERT J. GALEN,
THE HON. ALBERT P. STARK,
THE HON. JOHN A. MATTHEWS,
*THE HON. WARREN TOOLE,
**THE HON. HENRY L. MYERS,
} Associate Justices.

---

STATE, APPELLANT, v. SILVER BOW REFINING CO., RESPONDENT.

(No. 6,046.)

(Submitted December 6, 1926. Decided December 22, 1926.)

[252 Pac. 301.]

*Oil and Gas—Gasoline License Tax—Statute—Constitutionality —Amendment of Unconstitutional Act—Title of Act—Sufficiency—Statute not Discriminatory—Tax not Levied for County Purposes—Complaint — Indefiniteness and Uncertainty—Special Demurrer not Available, When.*

Statutes—Repealed Statute not Susceptible of Amendment.
　　1. Since the intention of the legislature in enacting a law is its life-giving principle, when it repeals a statute it deprives it of

---

1. See 25 R. C. L. 932.

†ASSOCIATE JUSTICE HOLLOWAY re-elected on November 2, 1926, for a six-year term, died December 11, 1926.
*Appointed (and qualified) December 20, 1926, to serve for the unexpired term of ASSOCIATE JUSTICE HOLLOWAY, deceased, ending January 3, 1927.
**Appointed December 23, 1926, to serve from January 3, 1927, until the election and qualification of his successor; qualified January 5, 1927.

that which gave it life; it is void for all purposes (sec. 98, Rev. Codes, 1921), and cannot thereafter be amended.

Same—Amendment of Unconstitutional Act not Prohibited by Statute.
2. Under the rule *expressio unius est exclusio alterius* it must be presumed that when the legislature enacted section 98, Revised Codes of 1921, to the effect that an Act amending a section of a repealed Act is void, it intended to exclude from its operation one found unconstitutional.

Same—When Unconstitutional Act Open to Amendment.
3. Where the legislature passes an Act clearly within its constitutional power but incorporates therein provisions later declared unconstitutional, it may by a subsequent Act amend the former by eliminating the objectionable provisions, and the Act so passed is valid as to future operations.

Oil and Gas—Statute Amendatory of Unconstitutional Act Held Valid.
4. Under the rule last above, *held* that Chapter 186, Laws of 1925, amending Chapter 156, Laws of 1921 (secs. 2381-2396, Rev. Codes 1921), and Chapter 150, Laws of 1923, imposing the gasoline dealers' license tax, which latter chapters had been declared unconstitutional, is a valid enactment as against the contention that an unconstitutional Act is not open to amendment.

Same—Constitution—Title of Gasoline License Statute—Sufficiency.
5. To meet the requirement of section 23, Article V, Constitution, the title to an Act is sufficient if it clearly expresses the general subject of the measure, and where its subject matter is the amendment of a certain section of the Codes and the amendment is germane to the provisions of such section, the title setting forth that its purpose is to amend the section relating to the given subject is sufficient, stating the nature of the proposed amendment.

Same—Gasoline License Statute not Discriminatory.
6. *Held*, that Chapter 186, Laws of 1925, imposing a gasoline dealers' license tax, is not unconstitutional, as discriminatory against dealers in Montana distilled gasoline, in that it permits license-free imports of gasoline from other states, since the state is without power to interfere with interstate commerce by the imposition of a license tax.

Same—License Statute—Tax not Invalid as Levied for County Purposes.
7. The license tax imposed under the above Act, fifty-five per cent of which is turned over to the counties for road purposes, *held* not open to the objection that by it taxes are levied upon counties for county purposes in violation of section 4, Article XII, of the Constitution, the tax being authorized under section 1 of that Article permitting the legislature to impose a license tax upon persons or corporations doing business in the state.

Pleading—Indefiniteness and Uncertainty—Facts Within Knowledge of Objecting Party—Special Demurrer Does not Lie.
8. Where the facts necessary to be alleged to make a complaint more definite and certain are peculiarly within the knowledge of defendant a special demurrer to the pleading does not lie at his hands.

---

3. Validating unconstitutional statute by amendment, see notes in 4 Ann. Cas. 920; 60 L. R. A. 564. See, also, 26 R. C. L. 906.
5. See 25 R. C. L. 848.

Same—Action to Recover Gasoline License Tax—Complaint—Indefiniteness
—Special Demurrer not Available Under Above Rule.
   9.  Since under section 2389, Revised Codes of 1921, as amended
   by Chapter 186, Laws of 1925, dealers in gasoline are required by
   section 2386 to furnish the state certain information as to business
   done by them under penalties prescribed, defendant in an action
   by the state to collect delinquent license taxes who had failed to
   make such reports was not in position to object to the complaint
   for uncertainty as to facts which might have been gathered from
   such reports if made.  (See par. 8, above.)

---

   [1]   Statutes, 36 Cyc., p. 940, n. 4; p. 1055, n. 48; p. 1068, n. 6 New;
p. 1106, n. 29.
   [2]   *Expressio unius est exclusio, etc.*, 25 C. J., p. 220, n. 17.   Statutes,
36 Cyc., p. 1122, n. 47.
   [3]   Constitutional Law, 12 C. J., sec. 250, p. 814, n. 51.   Statutes,
36 Cyc., p. 1055, n. 51.
   [4]   Statutes, 36 Cyc., p. 1055, n. 51.
   [5]   Statutes, 36 Cyc., p. 1019, n. 83, p. 1020, n. 85; n. 1028, n. 24;
p. 1030, n. 30.
   [6]   Commerce, 12 C. J., sec. 142, p. 104, n. 79.   Licenses, 37 C. J.,
sec. 53, p. 202, n. 41.
   [7]   Licenses, 37 C. J., sec. 48, p. 196, n. 98.
   [8, 9]   Pleading, 31 Cyc., p. 48, n. 56.

*Appeal from District Court, Silver Bow County; W. E.
Carroll, Judge.*

ACTION by the State against the Silver Bow Refining Com-
pany.  The court sustained a demurrer to the complaint on
which judgment was entered for defendant, and plaintiff ap-
peals.  Reversed and remanded.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,*
Assistant Attorney General, for Appellant, submitted an origi-
nal and a reply brief; *Mr. Angstman* argued the cause orally.

The principal contention made in the lower court was that
the statute is invalid because a valid amendment of an uncon-
stitutional statute cannot be had.  As to this point the authori-
ties are not in accord.  The weight of authority, however, as
well as the better reasoned cases, hold that an amending statute
is not invalid though it amends an unconstitutional Act.
(*Commonwealth* v. *Chesapeake etc. Ry. Co.,* 118 Va. 261, 87.
S. E. 622; *Ferry* v. *Campbell,* 110 Iowa, 290, 50 L. R. A. 92, 81
N. W. 604; *Lawton Spinning Co.* v. *Commonwealth,* 232 Mass.

28, 121 N. E. 518; *Walsh* v. *State,* 142 Ind. 357, 33 L. R. A. 392,
41 N. E. 65; *Allison* v. *Corcker,* 67 N. J. L. 596, 60 L. R. A.
564, 52 Atl. 362; *People* v. *DeBlaay,* 137 Mich. 402, 4 Ann.
Cas. 919, 100 N. W. 598; *Ross* v. *Board of Supervisors of
Wright Co.,* 128 Iowa, 427, 1 L. R. A. (n. s.) 431, 104 N. W.
506; *State* v. *Cincinnati,* 52 Ohio St. 419, 27 L. R. A. 737, 40
N. E. 508; 2 Lewis' Sutherland on Statutory Construction, 2d
ed., sec. 236; 36 Cyc. 1055.)

Sufficiency of title of Chapter 186, Laws of 1925: See *Hood*
v. *City of Wheeling,* 85 W. Va. 578, 102 S. E. 259; *State* v.
*Mullinix,* 301 Mo. 385, 257 S. W. 121; *Miller* v. *State,* 16 Ala.
App. 534, 79 South. 314; *Bertram* v. *Commonwealth,* 108 Va.
902, 62 S. E. 969; *Ross* v. *Aguirre,* 191 U. S. 60, 49 L. Ed.
94, 24 Sup. Ct. Rep. 22 [see, also, Rose's U. S. Notes] ; *People*
v. *Parvin,* 2 Cal. Unrep. 788, 14 Pac. 783; *State* v. *Tobin,* 31
Wyo. 355, 226 Pac. 681; *State* v. *Edwards,* 34 Utah, 13, 95
Pac. 367; *Beach* v. *Von Detten,* 139 Cal. 462, 73 Pac. 187;
*Montgomery* v. *State,* 107 Ala. 372, 18 South. 157.

Act does not impose a property tax: *State* v. *Camp Sing,* 18
Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516;
*Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477.

*Messrs. Wheeler & Baldwin,* for Respondent, submitted a
brief; *Mr. James H. Baldwin* argued the cause orally.

The purported statute on which appellant bases its claim
of right is an attempt to amend an unconstitutional and invalid
law and is of no legal force or effect. This court has definitely
held that purported sections 2382 and 2383, Revised Codes of
1921, as well as the purported amendments thereto, were void.
"Void" is defined as having no legal force; entirely null;
incapable of confirmation or ratification; of no legal or binding
force or validity. (*Forrester & MacGinnis* v. *Boston & M.
Consol. etc. Min. Co.,* 29 Mont. 379–403, 74 Pac. 1088, 76 Pac.
211.) The result is, that as the supposed original sections of
the Code and the purported amendments thereto, upon which

the Act in controversy here is based, were held by this court to be void, there was no existing law which could be repealed or changed, and an amendment thereof was entirely beyond the power of the legislative assembly. (*State* v. *Cooney,* 70 Mont. 355, 361, 362, 225 Pac. 1007; *In re Naegele,* 70 Mont. 129, 224 Pac. 269; *In re Terrett,* 34 Mont. 325, 332, 86 Pac. 266.) An unconstitutional statute is void from its inception. (*Ex parte Bockhorn;* 62 Tex. Cr. 651, 138 S. W. 706; *State* v. *Tufly,* 20 Nev. 427, 19 Am. St. Rep. 374, 22 Pac. 1054; *Boales* v. *Ferguson,* 55 Neb. 565, 76 N. W. 18, 19; *Seneca Mining Co.* v. *Osmun,* 82 Mich. 573, 9 L. R. A. 770, 47 N. W. 25.)

If life may not be breathed into a statute which is dead because it has been repealed, as held in *State* v. *Terrett,* 34 Mont. 325, by a subsequent statute it follows in logic and in law that life cannot be breathed into an Act of the legislative assembly which has never been of any legal force or effect. (*Louisville & N. R. Co.* v. *City of St. Louis,* 134 Ill. 656, 25 N. E. 963; *State* v. *Benton,* 33 Neb. 823, 51 N. W. 140–143; *Schamblin* v. *Means,* 6 Cal. App. 261, 91 Pac. 1020.) In *State* v. *Long,* 132 La. 170, 61 South. 154, the court said: "The difference between a statute repealed and a statute declared entirely unconstitutional is not very great. But an unconstitutional statute, when so declared, is, if possible, more inanimate and useless than a repealed statute."

The subject of the bill upon which appellant bases its claim of right is not clearly expressed in its title. (Sec. 23, Art. V, Const.) Section 29 of Article III of the Constitution of Montana is as follows: "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." This rule applies to every part of the Constitution, and its declaration with reference to the subjects upon which it assumes to speak are conclusive upon the legislature. (*State* v. *Gowdy,* 62 Mont. 119–126, 203 Pac. 1115; *State* v. *Weston,* 29 Mont. 125, 74 Pac. 415.) It follows that if the subject of a legislative Act is not clearly expressed

in the title the Act is void.   (*State* v. *Burr*, 73 Mont. 586, 590, 238 Pac. 585; *Hale* v. *Belgrade Co., Ltd.*, 74 Mont. 308, 317, 240 Pac. 371; *Savannah Mayor* v. *State*, 4 Ga. 26; *Albrecht* v. *State*, 8 Tex. App. 216, 34 Am. Rep. 737; *Sun Mutual Ins. Co.* v. *Mayor of New York*, 8 N. Y. 241; *Kansas* v. *Payne*, 71 Mo. 159; *Traders' Compress Co.* v. *Precure*, 107 Okl. 191, 231 Pac. 516, 519; *State* v. *Mitchell*, 17 Mont. 67, 75, 42 Pac. 100; *State* v. *Anaconda Copper Mining Co.*, 23 Mont. 498, 59 Pac. 854; *State* v. *Cunningham*, 35 Mont. 547, 90 Pac. 755.)

The title to Chapter 186 fails to meet the constitutional requirements in force at the time of its passage for the reason that a statement that its purpose was to amend certain sections of the Code, as amended, does not ·clearly or at all express what the proposed change in the law was to be.   (*Harland* v. *Territory*, 3 Wash. Ter. 131, 13 Pac. 453, 457–460; *People* v. *Hills*, 35 N. Y. 449; *People* v. *Briggs*, 50 N. Y. 553; *Tingue* v. *Village of Port Chester*, 101 N. Y. 294, 4 N. E. 625; *Leonard* v. *January*, 56 Cal. 1; *Hearn* v. *Louttit*, 42 Or. 572, 72 Pac. 132, 133.)

Chapter 186 denies to the respondent here the equal protection of the laws.   With specific reference to taxation, section 11 of Article XII of the Constitution of this state provides that: ''Taxes shall be levied and collected by general laws and for public purposes only.   They shall be uniform upon the same classes of subjects within the territorial limits of the authority levying the tax.''

Section 11 of the original Act (Sess. Laws 1921, p. 292), which was carried into the Revised Codes of 1921, is as follows: ''None of the provisions of this Act shall apply to the sales of gasoline or distillate when sold for and exported out of the state.''   One engaged in the production and sale of gasoline and distillate in Montana which is sold for and exported out of the state receives the same protection of the law that another engaged in producing and selling gasoline and

distillate for use in this state receives.   From the shoulders of the first is lifted the burden of paying the tax needed to provide the protection that he receives; the other is required to pay a tax which is not only used for his good, but is used for the good of the person similarly situated and receiving equal protection merely because his product is sold for use locally.

Respondent does not contend that the legislative assembly of this state is entirely without power to make classifications for the purpose of taxation, but it does contend that equal protection of the laws means subjection to equal laws applying equally to all in the same situation, and that while reasonable classification is permitted without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and that classification cannot be arbitrarily made without any substantial basis, but must be based upon substantial distinctions which make one class really different from another.   (*Southern R. R. Co.* v. *Greene,* 216 U. S. 400, 17 Ann. Cas. 1247, 54 L. Ed. 536, 30 Sup. Ct. Rep. 287 [see, also, Rose's U. S. Notes].)   On the authority of the last case cited this court should properly hold the Act upon which appellant bases its claim of right unconstitutional and void as unjustly discriminating class legislation; and the same result necessarily follows when the question presented here is viewed in another light.

It is settled law that where a business or occupation consists in the sale of goods, the license tax required for its pursuit is in effect a tax upon the goods themselves.   All must perceive that a tax on the sale of an article is a tax on the article itself.   (*State* v. *Bengsch,* 170 Mo. 81, 70 S. W. 711; *Welton* v. *Missouri,* 91 U. S. 275, 278, 23 L. Ed. 347 [see, also, Rose's U. S. Notes] ; *Brown* v. *State of Maryland,* 12 Wheat. (U. S.) 419, 6 L. Ed. 678.)   The Act involved here itself expressly denominates the proposed levy as "a tax," and it must be con-

ceded to have all the characteristics of a tax. It is a charge sought to be imposed by the legislature for purposes of revenue. (*State* v. *Gowdy,* 62 Mont. 119, 129, 203 Pac. 1115.) When the proposed levy sought to be enforced here is viewed as a tax on property, as it appears from the authorities above cited it should be, Chapter 186 runs directly counter to the first portion of section 1 of Article XII of the Constitution.

Chapter 186 violates section 4 of Article XII of the Constitution, which provides: ''The legislative assembly shall not levy taxes upon the inhabitants or property in any county, city, town, or other municipal corporation for county, town, or municipal purposes, but it may by law invest in the corporate authorities thereof powers to assess and collect taxes for such purposes.''

The Act as amended in 1925 directs that fifty-five per cent of the gasoline tax go to the counties for road purposes. This law is the only law of Montana by which it is attempted by an Act of the legislative assembly to impose a revenue tax for county purposes. It was attempted in the bachelor's tax, which was held unconstitutional in *State* v. *Gowdy,* 62 Mont. 119, 203 Pac. 1115. That the tax is not a license tax, but a revenue measure, and a tax independent of the license feature is manifest from the provision of law applicable to a license. No provision is made in the Act for the procuring of a license in order to permit a refinery to do business. No license whatsoever is issued. The designation of the same, therefore, as a license tax is merely a guise to conceal as a matter of form the real revenue purpose of the Act. That the Act is unconstitutional on this ground, see *State* v. *Eldredge,* 27 Utah, 477, 76 Pac. 337; *Fenton* v. *Board of Commrs.,* 20 Idaho, 392, 119 Pac. 41.

Even if Chapter 186, Session Laws of 1925, page 359, were constitutional, it cannot be enforced. Respondent does not contend that the same statute may not contain certain valid provisions and others that are unconstitutional, and that the in-

valid sections or provisions may be eliminated without affecting the valid portions, if the valid portions are so clearly separable from the invalid ones that they can stand and be operative without assistance of the invalid ones. However, it does contend that the Act involved here does not fall within that rule, but falls within other rules just as well established by the following authorities: Cooley's Constitutional Limitations, p. 210; *Neutzell* v. *Williams,* 191 Ky. 351, 230 S. W. 942, 945; *State* v. *Bengsch,* 170 Mo. 81, 70 S. W. 710, 719; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 565, 46 L. Ed. 679, 692, 22 Sup. Ct. Rep. 431 [see, also, Rose's U. S. Notes]; *Commonwealth* v. *Hatfield Coal Co.,* 186 Ky. 423, 217 S. W. 125; *Illinois Central R. R. Co.* v. *Commonwealth,* 154 Ky. 332, 157 S. W. 687; *State* v. *Bancroft,* 148 Wis. 124, 38 L. R. A. (n. s.) 526, 538, 134 N. W. 330; *Spraigue etc. Co.* v. *Thompson,* 118 U. S. 90, 30 L. Ed. 115, 117, 6 Sup. Ct. Rep. 988; *Stoney Creek Tp.* v. *Kabel,* 144 Ind. 501, 43 N. E. 559, 560; *State* v. *Cognevich,* 124 La. 439, 50 South. 439; *State ex rel. Cornell* v. *Poynter,* 59 Neb. 417, 81 N. W. 431, 435; *Northwestern Mutual Life Ins. Co.* v. *Lewis & Clarke County,* 28 Mont. 484, 496, 98 Pac. 572; *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 189, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833.

In the case at bar the valid and invalid portions of the original Act are so mutually connected with and dependent on each other as conditions, considerations and compensations for each other as to require the belief that the legislature intended them as a whole, and with a result that the provisions other than sections 2 and 3 of the original Act were so dependent, conditional and connected that they fell with them. (*Northwestern Mutual Life Ins. Co.* v. *Lewis & Clarke County,* 28 Mont. 496, 98 Pac. 572.)

An inspection of the original Act, Chapter 156, Session Laws of 1921, will show clearly that the invalid portion—sections 2 and 3 thereof—formed an inducement, in fact the entire inducement,—to its passage, with the result that when those

sections of the original Act were declared unconstitutional by this court the entire Act fell with them, and even if that portion of Chapter 186, Session Laws of 1925, in controversy here were not unconstitutional and void, it would be incapable of enforcement.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The state commenced action against the Silver Bow Refining Company for the recovery of amounts alleged to be due as delinquent license taxes for the second and third quarters of the year 1925. The defendant interposed a demurrer to the complaint filed, which is both general and special. This demurrer was sustained in its entirety, and, the state refusing to amend, judgment was entered in favor of defendant. From this judgment the state has appealed specifying error upon the action of the court in sustaining the demurrer and in entering judgment.

The complaint states two causes of action which are identical, except as to the period covered; the demurrers to the two causes of action are likewise identical. It will therefore be necessary only to quote the material allegations of the first cause of action alleged, and what is hereafter said with regard thereto will apply equally to the second cause of action.

Paragraphs 1 and 2 of the first cause of action allege that the Silver Bow Refining Company is a corporation authorized to do business within this state, and engaged in the business of "manufacturing, refining, producing, and compounding gasoline and distillate, * * * and of selling and distributing the same within the state of Montana, * * * " and was so engaged during the quarter ending June 30, 1925.

Paragraph 3 alleges that, during such quarter, and while so engaged in business, the defendant "refined, reduced, manufactured, produced, and compounded and sold gasoline and distillate in the state, or shipped, transported, or imported into

and distributed or sold within this state, gasoline, and distillate exclusive of gasoline and distillate distributed by the defendant or sold by the defendant in original packages in which the same was shipped, transported, or imported, * * * amounting to a total of 132,694 gallons.''

Paragraph 4 alleges that, for the period of more than thirty days after the expiration of said quarter, the defendant failed, neglected and refused to make out and deliver to the state treasurer a duplicate statement, or any statement, showing the facts required by law to be so reported, and also failed and refused to pay the tax, or any part thereof, required by law to be paid.

Paragraph 5 alleges that, pursuant to the provisions of the law, immediately after the expiration of the said thirty-day period, the state board of equalization proceeded to inform itself, as best it could, regarding the ''matters and things required to be set forth in such statement,'' found and fixed the amount of gasoline and distillate sold, and fixed the tax due, and assessed a penalty of five per cent for such failure and refusal, and made a statement thereof to the state treasurer, from which statement it appears ''that the total number of gallons of gasoline and distillate refined, manufactured, produced, or compounded and sold within the state * * * '' during said quarter and by the defendant was 132,694 gallons, and the tax thereon, figured at two cents per gallon, was $2,657.88, and that no part thereof has been paid.

In support of the general demurrer, defendant contends that the complaint does not state facts sufficient to constitute a cause of action, for the reason that it is the duty of the pleader to set out facts showing a valid and existing right in the plaintiff and the infringement thereof by the defendant, and that such duty is not discharged here, for the reasons (1) that the purported statute on which the state bases its claim of right to collect from the defendant is an attempt to amend an unconstitutional and invalid enactment and is therefore of no

force and effect; (2) that the subject of the bill constituting such enactment is not clearly expressed in the title, and therefore the amendatory Act itself is unconstitutional; (3) that the amendatory Act denies to the defendant the equal protection of the laws, and is therefore unconstitutional; (4) that the Act is unconstitutional, in that it attempts to lay a tax for county purposes; and (5) that, even though the Act may not be unconstitutional as a whole, it is unenforceable, for the reason that its main purpose violates constitutional provisions as above pointed out. (6) As to the special demurrer, it is contended that the complaint is uncertain, ambiguous and unintelligible, in that it does not disclose what proportion of the products produced and sold was gasoline and what distillate, what proportion thereof was produced in the state and what imported, what proportion shipped into the state was sold in the original package, and that it cannot be ascertained therefrom what information was required by the state from the defendant or what the investigation of the state board disclosed.

Our "Gasoline Distributors' and Dealers' License Tax" Law was first enacted as Chapter 156, Laws of 1921, and was incorporated in the Revised Codes of 1921 as Chapter 185, Part III, of the Political Code, embracing sections 2381 to 2396. In 1923, sections 2382, 2383 and 2392 of said Chapter were amended, and sections 2393 and 2394 were repealed (Chap. 150, Laws of 1923), and in March, 1925, sections 2382, 2383 and 2392, as amended above, and the original sections 2384 and 2389 were amended. (Chap. 186, Laws of 1925.)

On April 4, 1925, this court held that the 1923 law was unconstitutional (*State* v. *Sunburst Refining Co.*, 73 Mont. 68, 235 Pac. 428), and on June 26, 1926, likewise held the law of 1921 unconstitutional (*State* v. *Sunburst Refining Co.*, 76 Mont. 472, 248 Pac. 186). In each instance the Act under consideration was declared discriminatory and a denial of the equal protection of the laws.

1. The principal question involved herein is: Can the legislature, by amending an unconstitutional measure, enact a valid law? Counsel for defendant contend that this cannot be done, and in support of their contention cite many authorities from other jurisdictions. Most of these decisions, however, are to the effect that a law which has been repealed cannot be amended, and furnish no assistance in determining the question before us.

We need no citation of outside authorities to sustain the [1] declaration that a repealed law cannot be amended, as section 98, Revised Codes of 1921, declares that "an Act amending a section of an Act repealed is void," and, in conformity with this declaration of the legislature, enactments falling within the condemnation of the above section have been declared void by this court. (*In re Naegele,* 70 Mont. 129, 224 Pac. 269.) The fundamental principle underlying the statute regarding repealed sections is that there is nothing to be amended; the enactment has been destroyed by the very power which created it; it is as though it had never existed, or, having once lived, its life has been ended in the most effectual manner. It cannot be amended, for, as Mr. Justice Galen said in the *Naegele Case,* "Life may not thus be breathed into a dead statute," or, adopting the simile used in *State* v. *Long,* 132 La. 170, 61 South. 154, "It is not possible to graft a live tree on a dead tree."

A statute is the expression of the public will by the lawmaking power of the state (*Ware* v. *Hylton,* 3 Dall. 199, 1 L. Ed. 568); it is the crystallization of the intention of the legislature, as to what shall be the rule, into a positive law, and the primary rule laid down for the construction of statutes is that the intention of the legislature must, if possible, be ascertained and given effect. (*Carter* v. *Kall,* 53 Mont. 162, 5 A. L. R. 1309, 162 Pac. 385; *State ex rel. Goodman* v. *Stewart,* 57 Mont. 144, 187 Pac. 641; *Reeve* v. *City of Billings,* 57. Mont. 552, 189 Pac. 768; *Wibaux Imp. Co.* v. *Breitenfeldt,* 67 Mont.

206, 215 Pac. 222.) The intention of the legislature as to the [2] law is thus the very breath of life to the statute, and, when that body *repeals* a statute, it withdraws that with which it instilled life into the enactment; but is the condition of a repealed statute analogous to that of one which, in spite of the intention of the legislature, is found to be unconstitutional?

Had the legislature intended that this latter class of enactments should fall within the same category as the former, it would seem that that body would have included, in section 98 above, Acts amending unconstitutional enactments. As the legislature did not see fit to do so, it must be assumed that that body intended to exclude, from the operation of the rule of procedure laid down, this class of amendments, under the rule of interpretation that *"expressio unius est exclusio alterius."* Can this intention be given effect?

Following the simile above adopted, in passing upon an [3] amendment to an enactment lacking a proper title, a Pennsylvania jurist declared that, "if the main stock were alive and only the top were affected, this ingrafting process might give it new life," but that, when the death was at the root of the tree, nothing could be done for it. (*Teeple* v. *Wayne County,* 23 Pa. Co. Ct. R. 361.) However, where the lawmaking body has solemnly declared its intention as to what shall be the law upon a subject clearly within its constitutional power and authority, which enactment would have become valid except for some defect in the body of the Act which could originally have been cured, the roots and the "main stock" are still alive and are grounded in fertile constitutional soil, and all that is necessary to cause the tree to flourish is scientific pruning or grafting, dependent upon whether the legislature has said too much or too little.

While there are authorities to the contrary, it is said by the text-writers that the "better rule" and "the decided weight of authority" is that an amendatory statute, which purports to amend a statute "which for any reason has been declared

invalid" constitutes a valid enactment. (Lewis' Sutherland on Statutory Construction, 2d ed., 435; 36 Cyc. 1055; 25 R. C. L., sec. 158.)

This declaration is broader than is necessary of adoption here, as we are concerned only with the amendments of a statute which has since been declared unconstitutional for the reason that it contained discriminatory provisions which might have been eliminated in the original Act, and could, without question, have been later re-enacted in its present form, had the legislature adopted that method of redeclaring its intention, and what we here declare refers only to such an amendment. Such amendments are said to be regarded as modifications of prior legislation "in the nature of a re-enactment," and such method of supplying defects in statutes after they have been declared unconstitutional by reason of such defects, is said to be "not objectionable as to future operations" (8 Cyc. 810); and in *Commonwealth* v. *Chesapeake & O. Ry.*, 118 Va. 261, 87 S. E. 622, it is said: "Upon the threshold of this proposition it may be asked what more natural method of curing the defects of an unconstitutional law can be suggested than that the legislature should amend and re-enact it so as to remove the objection?"

We therefore hold that the amendment here attacked and **[4]** known as Chapter 186, Laws of 1925, as it merely corrected defects in the original unconstitutional Act of the legislature, which defects could have been eliminated originally and thereby a valid law would have been created, is a valid enactment and not open to the charge first made against it. This holding is supported by the following authorities: *Lang* v. *Kiendl*, 27 Hun (N. Y.), 66; *State* v. *Cincinnati*, 52 Ohio St. 419, 27 L. R. A. 737, 40 N. E. 508; *Jacksonville etc. Ry.* v. *Adams*, 33 Fla. 608, 24 L. R. A. 272, 15 South. 257; *Walsh* v. *State*, 142 Ind. 357, 33 L. R. A. 392, 41 N. E. 65; *Allison* v. *Corker*, 67 N. J. L. 596, 60 L. R. A. 564, and note, 52 Atl. 362; *Mortland* v. *State*, 52 N. J. L. 521, 20 Atl. 673; *Hall* v.

*Commissioners,* 177 Mass. 434, 59 N. E. 68; *People* v. *De Blaay,* 137 Mich. 402, 100 N. W. 598; *Iowa S. & L. Assn.* v. *Selby,* 111 Iowa, 402, 82 N. W. 968; *Steele* v. *Erskine,* 98 Fed. 215, 39 C. C. A. 173; *Commonwealth* v. *Chesapeake & O. Ry.,* above.

2. It is next contended that the subject of the enactment is [5] not clearly expressed in the title. The title to the amendatory Act reads as follows: "An Act to amend sections 2382, 2383 and 2392 of the Revised Codes of Montana of 1921, as amended by Chapter 150 of the Laws of 1923, and to amend sections 2384 and 2389 of the Revised Codes of Montana of 1921, all relating to the imposition of the tax on the sale of gasoline, and the collection and disposition thereof, and prescribing a penalty for neglect or refusal to furnish statements and to pay the tax." (Laws 1925, Chap. 186.)

Section 23 of Article V of the Constitution provides that: "No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject which shall be clearly expressed in its title," *etc.*

The purposes of this provision have been too often expressed by this court to require repetition here; they are clearly stated in *State* v. *Anaconda C. M. Co.,* 23 Mont. 498, 59 Pac. 854; *State* v. *McKinney,* 29 Mont. 375, 1 Ann. Cas. 579, 74 Pac. 1095; *State ex rel. Boone* v. *Tullock,* 72 Mont. 482, 234 Pac. 277; *State ex rel. Foot* v. *Burr,* 73 Mont. 586, 238 Pac. 585; *Hale* v. *Belgrade Co.,* 74 Mont. 308, 240 Pac. 371.

It is first contended that the title is defective for the reason that it is impossible that any subject can be germane to an unconstitutional and void enactment. This is a mere play upon words; under the conclusion reached in paragraph 1 foregoing, the objection is untenable.

Counsel argue at length that the title above did not advise the legislature and the general public as to all matters to be dealt with in the body of the amendment. "But by this con-

stitutional notice it is only intended that the subject of the bill shall be fairly expressed in the title. It is not necessary— for the Constitution has not so declared—that the title shall embody the exact limitations or qualifications contained in the bill itself which are germane to the purpose of the legislature, if the general subject of the measure is clearly expressed in the title. Upon the highest authority it is held that, under constitutional provisions substantially like that referred to in Montana, where the degree of particularity necessary to be expressed in the title of a bill is not indicated by the Constitution itself, the courts ought not to 'embarrass legislation by technical interpretations based upon mere form or phraseology. The objection should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or, if but one object, that it was not sufficiently expressed by the title.' " (*State* v. *Anaconda C. M. Co.*, above.)

Here the sole purpose of the amendment was to correct grave defects in the original statute, and all that was incorporated in the bill as amended was germane to the subject of the original enactment. As was said in *Clay* v. *Central R. & B. Co.*, 84 Ga. 345, 10 S. E. 967: "The subject matter of the Act was to amend a certain section of the Code, *supra*, and the amendment was germane to the provisions of that section and was upon the same subject. The subject matter, therefore, was to amend the section; and while there might have been different objects and purposes in the amended Act from those contained in the original, yet the amendment was germane thereto."

Counsel further urge that a title which merely recites that certain sections of the Codes relating to a certain subject are to be amended is not sufficient, but that the nature of the amendment must be expressed in the title. On this contention it is sufficient to say that such a title was held to be sufficient compliance with section 23, Article V of the Constitution, in

*State* v. *Courtney,* 27 Mont. 378, 71 Pac. 308.    (See, also, *State
ex rel. Bray* v. *Long,* 21 Mont. 26, 52 Pac. 645, and *State* v.
*Anaconda C. M. Co.,* above.)

So long as the provisions of an Act are germane to the gen-
eral subject, it is not necessary that all thereof be mentioned
in the title.    (*State* v. *McKinney,* above; *State ex rel. Boone* v.
*Tullock,* above.)

We therefore hold that the title to the amendment is suffi-
cient.

3. It is next contended that the Act in question is uncon-
[6] stitutional in that it denies to the defendant the equal
protection of the law.

The question as to what constitutes an unjust discrimination
in a statute such as the one before us has been sufficiently dis-
cussed in the two cases of *State* v. *Sunburst Refining Co.*
above.    It was on this ground that the Acts of 1921 and 1923
were declared unconstitutional.    In the first of those cases
it is said that, by the Act now under consideration, "most,
if not all, of the objectionable features [were] eliminated,
* * *   so that, under the existing law, dealers in Montana
gasoline and distillate are no longer penalized solely for pat-
ronizing their home industries."    Defendant, however, con-
tends that the law still discriminates against it as a home in-
dustry, in that it permits the export of products from the
state without tax, and lays no tax upon products imported
from a foreign state for use and not for sale.    So far as ex-
ports are concerned, there is no discrimination, as defendant
derives the same benefit from the law as do other manufac-
turers and dealers.

As to the contention that products may be imported into the
state for consumption without the payment of a tax, and thus
users are induced to deal with outside concerns when their
needs are sufficiently great to warrant buying in bulk and thus
withdraw their patronage from dealers within the state, the
situation is one which cannot be remedied by state legislation.

By sections 9 and 10, Article I, of the Constitution of the United States, the regulation of interstate commerce is granted exclusively to the Congress; Congress has long since acted on the subject, and "the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." (Chief Justice Marshall in *McCullouch* v. *Maryland,* 4 Wheat. 316, 4 L. Ed. 579.)

" 'Commerce among the states' does not stop at a state line" (*Gilman* v. *Philadelphia,* 3 Wall. 713, 18 L. Ed. 96), "and must be capable of authorizing the disposition of those articles which it introduces." (*Leisy* v. *Hardin,* 135 U. S. 100, 34 L. Ed. 128, 10 Sup. Ct. Rep. 681.)

In the first case of *State* v. *Sunburst Refining Co.,* above, the Act of 1923 was held unconstitutional because of an unjust discrimination which could have been eliminated under the decision of *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, 67 L. Ed. 1095, 43 Sup. Ct. Rep. 643, holding that a tax on the sale of oil imported after it had come to rest in the state would be "neither a regulation nor a burden of the interstate commerce of which this oil had been the subject." It was likewise there held that a tax might be laid on such oil "as property," but here we are not concerned with a property tax but with an "excise or occupation tax," and any attempt to lay a tax upon products shipped into the state for consumption only comes squarely within the federal inhibition.

The legislature, therefore, merely bowed to the supreme power; it went as far as possible in eliminating discrimination, and, if the Act under consideration is not constitutional, then no such tax law can be enacted which would be constitutional. As the legislature has the undoubted power to provide for such a tax—and this is conceded—the Act before us is not open to the charge of unjust discrimination.

4. It is next asserted that the Act under consideration is in
[7]  contravention of section 4 of Article XII of our Constitu-
tion, which reads: ''The legislative assembly shall not levy taxes
upon the inhabitants or property in any county, city, town, or
municipal corporation for county, town, or municipal purposes,
but it may by law invest in the corporate authorities thereof
powers to assess and collect taxes for such purposes.''

Counsel by extensive argument seek to bring this case within
the rules announced in *State* v. *Pepper,* 70 Mont. 596, 226 Pac.
1108, and *State ex rel. Pierce* v. *Gowdy,* 62 Mont. 119, 203 Pac.
1115. By this argument counsel seek to convince this court
that by the Act the legislature intended to levy a tax for
county purposes. In *State* v. *Camp Sing,* 18 Mont. 128, 56
Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516, the distinction
between the power to ''levy a tax'' and to impose an excise or
license tax is clearly pointed out, and it is there said, ''It is
by no means clear to us that the intent of section 4 was to refer
to licenses,'' and the license tax law under consideration was,
therefore, upheld.

Again, in *Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477, after
reviewing the above decision with others, it is said: ''In the
*Camp Sing Case* the court reviewed at great length the several
provisions of Article XII, explained their purpose, and reached
the conclusion, in effect, that all the restrictions imposed upon
the legislature by that Article are restrictions imposed with
reference to property taxation. We are asked now to overrule
these decisions, but in our judgment the correctness of each of
them is beyond question.''

The nature of the Act before us has been determined by this
court in the first *Sunburst Refining Co. Case,* above, where it
is said: ''This statute is not in any sense a police regulation.
It imposes an excise or occupation tax solely for raising revenue
and was doubtless intended to be that form of license tax men-
tioned in and authorized by the last sentence of section 1,
Article XII, of our state Constitution.'' This being so, the

Act cannot be said to violate section 4 of Article XII above, but comes under the "last sentence of section 1, Article XII, above referred to," to-wit, "The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state," and, under this authority and the above decisions, the Act under consideration is a valid enactment.

5. As to the grounds stated in the special demurrer, it is [8, 9] expressly alleged in the complaint that the total amount of gasoline and distillate on which the tax is figured is exclusive of that sold in the original package, and, as the rate of taxation on gasoline and distillate is the same and also applies equally to products either manufactured in the state or imported, it is of little importance whether or not the complaint in such a case segregates the different items going to make up the total, while a fair reading of paragraph 5 above, containing the charging part of the complaint, would seem to indicate that the entire amount of the total is for gasoline and distillate, refined, manufactured, produced and sold within the state. But whether this is so or not, in every particular in which the defendant charges that the complaint is uncertain, the facts upon which it might be made more definite and certain are peculiarly within the knowledge of the defendant—the facts which the defendant is required by law to furnish to the state, and upon failure so to do it is declared that no action shall be maintained by the party in default to review, revise or change the statement made by the board, or to recover taxes paid under protest. (Sec. 2389, Rev. Codes, as amended by Chapter 186, Laws of 1925.)

In jurisdictions where such uncertainty is reached by a motion to make more definite and certain, it is held that, where the facts to be alleged in order to make a complaint more definite and certain are peculiarly within the knowledge of the movant, such motion will not lie. (*Union Gold Min. Co.* v. *Crawford,* 29 Colo. 511, 69 Pac. 600; *Barron* v. *Pittsburgh*

*Plate Glass Co.,* 10 Ohio S. & C. P. Dec. 114.) In this state such defect is reached by a special demurrer (*Herbst Imp. Co.* v. *Hogan,* 16 Mont. 384, 41 Pac. 135), and under that rule such special demurrer would not lie, and, in view of the penalty attached for failure to make the required statement, no useful purpose would be served by according the defendant the information sought.

Under the circumstances, we are of the opinion that the complaint was sufficient as against the special demurrer as well as against the general demurrer.

For the reasons stated, the judgment is reversed, and the cause remanded to the district court of Silver Bow county, with direction to vacate the judgment and order sustaining defendant's demurrer and overrule both the general and special demurrers.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and STARK concur.