POSADOS, COLLECTOR, ET AL. *v.* CITY OF MANILA.

CERTIORARI TO THE SUPREME COURT OF THE PHILIPPINE
ISLANDS.

No. 363.　Argued April 28, 1927.—Decided May 31, 1927.

1. The duty of the Collector of Internal Revenue of the Philippines
   to issue, and of the Insular Auditor to countersign, a warrant to
   the City of Manila for the share of internal revenue receipts as-
   signed to it by the Administrative Act of 1917, is mandatory and
   (in the absence of any uncertainty as to the amount of the collec-
   tions,) ministerial, and enforceable by mandamus. P. 415.
2. Whatever the powers of the Auditor over settlement of accounts
   between the City and the Metropolitan Water Board, they do not
   authorize him to direct that the Collector withhold money from the
   City's share of internal revenue collections, to pay a claim of the
   Board for water used by the city government. P. 416.
—— P. I. ——, affirmed.

CERTIORARI (271 U. S. 658) to a judgment of the Su-
preme Court of the Philippine Islands, in an original
proceeding, granting a writ of mandamus requiring the
Collector of Internal Revenue to issue, and the Insular
Auditor to countersign, warrants for moneys due the City
out of receipts from internal revenue taxes.

*Messrs. O. R. McGuire, pro hac vice, and William C.
Rigby,* with whom *Messrs. L. Hedrick* and *Delfin Jara-
nilla* were on the brief, for petitioners.

*Mr. Guillermo B. Guevara,* with whom *Messrs. F. W.
Clements, Lawrence H. Cake,* and *Alexander Britton* were
on the brief, for respondent.

MR. CHIEF JUSTICE TAFT delivered the opinion of the
Court.

This was a suit begun by an original petition in the
Supreme Court of the Philippine Islands under § 2947

of the Compiled Acts of the Philippine Commission, 1907, praying for an original writ of mandamus directed to Juan Posados, Jr., Collector of Internal Revenue of the Islands and of Manila, and to Benjamin F. Wright, Insular Auditor, requiring the Collector to issue warrants payable to the City of Manila for the share of the internal revenue taxes collected by him due to the City under the statutory law, and requiring the Auditor to countersign those warrants. In furtherance of the main prayer there was a prayer for a temporary injunction against the issue and countersigning of warrants for a part of such receipts in favor of the Metropolitan Water District. The Metropolitan Water District and the Insular Treasurer were also made parties. The Supreme Court, after answers and hearing, granted the prayer for mandamus against the Collector and Auditor.

The substance of the controversy is this: The City of Manila under Spain owned the water works furnishing water to the city for a great many years; and, since the United States became the sovereign in the Islands, the City, created a municipal corporation by the present Philippine government, chapter 60, Title X of the Philippine Administrative Code No. 2711, was authorized to issue bonds for $2,000,000 to enlarge and improve them. March 6, 1919, the Legislature of the Philippine Islands passed a law creating a Metropolitan Water District for the City and neighboring territory (Act No. 2832), made it a corporation governed by directors and turned over the works to its management. A dispute has arisen as to whether the City of Manila should pay to the Metropolitan Water District compensation for water used by the city government. The authorities of the City of Manila contend that the City is not liable, because the water works are and have been its property for centuries. The issue was considered by the Metropolitan Water District Board and a majority of the Board reached the conclu-

sion that there was no money due from the City for the water paid. The Governor General has appellate administrative jurisdiction over the decisions and resolutions of the Board—Act 3109—and he took the view of the minority of the Board and held that the City did owe the Metropolitan District for the water furnished it. The City was not a party to this proceeding. In accord with the conclusion of the Governor General, the Insular Auditor directed the Collector of Internal Revenue to withhold from the City's share of the internal revenue collections money enough to pay what was due for the water, and directed the Collector to issue his warrant for that amount from the share of the City in the internal revenue collections in enforcement of the claim of the Metropolitan Board for the amount due.

Section 3 of the Organic Act of the Philippine Islands, known as the Jones Law, 39 Stat. 545, c. 416, directs that no money shall be paid out of the treasury except in pursuance of an appropriation by law; that all money collected on any tax levied or assessed for a special purpose shall be treated as a special fund in the treasury and paid out for such purpose only.

By § 8 of the same act the general legislative power, except as therein otherwise provided, was granted to the Philippine Legislature, authorized by the Act.

The Jones Act describes the duties of the Insular Auditor as follows:

Section 24. "That there shall be appointed by the President an auditor, who shall examine, audit, and settle all accounts pertaining to the revenues and receipts from whatever source of the Philippine government and of the provincial and municipal governments of the Philippines, including trust funds and funds derived from bond issues; and audit, in accordance with law and administrative regulations, all expenditures of funds or property pertaining to or held in trust by the government or the Provinces

or municipalities thereof.   He shall perform a like duty with respect to all government branches. . . .

"The decisions of the auditor shall be final and conclusive upon the executive branches of the government, except that appeal therefrom may be taken by the party aggrieved or the head of the department concerned within one year, in the manner hereinafter prescribed."

Section 25 of the same Act provides:

"That any person aggrieved by the action or decision of the auditor in the settlement of his account or claim may, within one year, take an appeal in writing to the Governor General. . . . If the Governor General shall confirm the action of the auditor, he shall so indorse the appeal and transmit it to the auditor, and the action shall thereupon be final and conclusive.   Should the Governor General fail to sustain the action of the auditor, he shall forthwith transmit his grounds of disapproval to the Secretary of War, . . . [whose] decision is final and conclusive."

By § 588 of the Administration Act of 1917, as amended by Act No. 3066 adopted after the passage of the Jones Act, it is provided that the Insular Auditor shall have the power to authorize and enforce the settlement of accounts subsisting between the different bureaus or offices of the Insular service; between such bureau or office and any provincial, municipal, or city government; between provincial governments; between municipal or city governments and between any such provincial and municipal or city governments.

The contention on behalf of the Insular Auditor is that the City of Manila, on the one hand, and the Metropolitan Water Board, on the other, are branches of the Insular Government, and that by virtue of the foregoing statutes he is given authority to settle accounts between them, and that his decision is final and conclusive upon such executive branches, with the appeal provided as

above stated.    He maintains that this gives him the authority to decide as between the Metropolitan Water Board and the City of Manila, whether the city should pay the water board for the water furnished it because it is necessarily involved in the settlement of accounts between the two corporations and branches of the insular government, that having decided that the money was due for the water furnished from the City to the Metropolitan Board, he is further charged by § 588 of the Administrative Code with the duty of enforcing that decision and settlement.    He may, therefore, he says, direct the Collector of Internal Revenue to issue a warrant for such share of the City in the internal revenue collections as may be enough to pay the debt owing from the City to the Water Board, and that this is a necessary implication from his power by law to enforce such settlement.

The disposition of the internal revenue receipts is provided by the Administrative Act in the following sections:

" Sec. 490.    *Disposition of internal revenue in general.*—Internal revenue collected under the laws of the Philippine Islands and not applied as hereinabove provided or otherwise specially disposed of by law shall accrue to the Insular Treasury and shall be available for the general purposes of the Government, with the exception of the amounts set apart by way of allotment under the next succeeding section.

" Sec. 491.    *Allotments of internal revenue for special purposes.*—Of the internal revenue accruing to the Insular Treasury under the preceding section there shall be set apart ten per centum as a provincial allotment, ten per centum as a road and bridge allotment, and twenty per centum as a municipal allotment, but the amounts allotted to said several purposes during any year shall not be greater than the amount allotted for the same purposes during the fiscal year nineteen hundred and nine.

" SEC. 492. *Appointments and use of provincial allot-ment.*—The provincial allotment shall be apportioned to the treasuries of the several respective provinces and shall there accrue to their general funds, respectively.

. . .

" SEC. 494. *Apportionment and use of municipal allot-ment.*—The municipal allotment shall be for the benefit of the inhabitants of the Islands in the purview of their community requirements, being available for municipal or other use as hereinbelow provided. . . .

" SEC. 495. . . . The city of Manila shall receive the shares which it would receive if it were both a munic-ipality and a regularly organized province, and for the purposes hereof shall be deemed to be both the one and the other.

. . .

" SEC. 497. *Warrants for quarterly payments of allot-ments.*—The payment of the internal-revenue allotments shall be made from the Insular Treasury quarterly upon warrants drawn by the Collector of Internal Revenue."

It is apparent from reading the foregoing sections that they are directions by statutory law as to the distribution of the collections made by the Internal Revenue Collector, and that the share to be paid to the City of Manila is fixed thereby and the exact figure can be ascertained mathematically. This requires no exercise of discretion, judicial or otherwise, after the total amount of the internal revenue receipts are known; and in this case there is no dispute as to that amount. It becomes the ministerial duty of the Internal Revenue Collector to draw his war-rant for the share of the City thus fixed by statute. It becomes the duty of the Insular Auditor, when such a warrant of the Internal Revenue Collector is presented to him, after ascertaining that the amount for which it is drawn is in accord with the directions of the statute, to

countersign the same. *Kendall* v. *United States*, 12 Pet. 524; *Wright* v. *Ynchausti*, 272 U. S. 640, 651, 652.

No matter what the power of the Auditor may prove to be with reference to the settlement of accounts as between the City of Manila and the Metropolitan Water Board, or what his power with reference to enforcing the settlement so reached by him, nothing in the laws of the Islands is disclosed to us which enables the Auditor in the enforcement of such settlements to dispense with or to suspend the operation of positive law in reference to the course which shall be followed in the disposition by the Internal Revenue Collector of the receipts from internal revenue collections which he is directed by the statute to pay to the City. His duty is clearly set forth and he has nothing to do but to comply with it, having ascertained exactly what the share of the City is under the foregoing provisions.

When this share comes to the City under the warrant to be drawn in its favor by the Collector, the question of what shall thereafter be done in respect to it is not a matter that we are called upon to consider. Whether the issue between the Metropolitan Water Board and the City of Manila, in the absence of agreement, is one that must then be decided by a suit in court brought by the Metropolitan Water Board against the City, asking for a judgment for the water used, or whether the issue is to be determined by the Insular Auditor in his asserted power of settling and enforcing accounts between the two branches of the Government, are issues not before us. The only question here is what should be done with the share of the collections made by the Internal Revenue Collector under the sections of the Administrative Code already quoted. By § 2442 of the Laws of the Philippines relating to the City of Manila, there is a provision for a permanent continuing appropriation during the time the City remains the capital of the Islands from any

funds in the Insular Treasury, not otherwise appropriated, equal to 30 per cent. of the expenses of the City government, within certain other limitations, and the Insular Auditor is to ascertain the amount thus appropriated and transfer it to the City. How far this would involve quasi-judicial or administrative discretion not to be controlled by mandamus, it is not necessary for us to consider or decide; because this case relates only to internal revenue receipts and their distribution, in respect of which the provisions of law are specific and mandatory as we have seen. The conclusion of the Supreme Court of the Philippines in directing a mandamus to issue against the Internal Revenue Collector and the Insular Auditor was in accordance with the statutory law of the Philippines and was right.

A majority of the Supreme Court of the Philippines reached this conclusion. That Court further expressed an opinion as to the relation of the City to the Insular Auditor and his functions, which was not necessary, it seems to us, to decide this case. We desire therefore to limit our opinion to the mere question whether the City's share of the internal revenue collections must be paid to the City by the Collector.

The judgment of the Supreme Court of the Philippines is

*Affirmed.*