[Civ. No. 5899. First Appellate District, Division One.—December 30, 1927.]

COUNTY OF SAN BENITO, Petitioner, v. RAY L. RILEY, as Controller of the State of California, Respondent.

132

Wyckoff & Gardiner and A. M. Runnells, District Attorney, for Petitioner.

U. S. Webb, Attorney-General, and Charles A. Wetmore, Jr., and R. L. Chamberlain, Deputies Attorney-General, for Respondent.

KNIGHT, J.—The County of San Benito has petitioned this court for a writ of mandate to compel the State Controller to deliver to the county certain state warrants for the payment of the total sum of $29,685.24, representing the county's share of moneys collected by the state pursuant to the terms of an act of the legislature imposing a license tax upon the business of producing, refining and distributing motor vehicle fuel, known as the Motor Vehicle Fuel Act. (Stats. 1923, p. 571.)

Answering, the Controller expressly admits the allegations of the county's petition showing that according to the terms of said act the county is entitled to said warrants for the amount claimed, but he has interposed a special defense which in substance sets forth that the county refuses to pay to the state an alleged indebtedness in the sum of $13,336.44 incurred under the provisions of sections 2192 and 2193 of the Political Code for the support of feeble-minded persons committed to the Sonoma State Home by the superior court in and for that county. The prayer of the answer is "(1) That this court, as a court of equity, take up, consider and determine the respective claims of the plaintiff and the defendant as set forth in the pleadings herein, and adjudge the amount due respectively from one to the other. (2) That as a condition precedent to the issuance of any writ of mandate out of this court requiring said defendant to draw the warrants referred to in the pleadings herein, the said plaintiff, the County of San Benito, be required to pay to the Controller in accordance with law, the sums so found by this court to be due from the plaintiff for the care and support of the inmates of the Sonoma State Home. . . . " The county has demurred to the answer upon general and special grounds, among them being that the matters pleaded therein do not constitute a defense, and that in any event this court is without original jurisdiction to hear or determine the

controversy pleaded in said special defense. We are of the opinion that the demurrer must be sustained.

The fuel act in question provides, among other things, that all money received by the State Controller under its terms shall be deposited in the state treasury to the credit of the "Motor Vehicle Fuel Fund," and that after certain refunds are paid one-half of the money remaining shall be paid to the counties in the proportions specified in said act; that in the months of May and November of each year the state treasurer shall make a report to the Controller for the preceding six months showing the condition of said fund, "and thereupon the controller shall draw his warrant upon the 'Motor Vehicle Fuel Fund' in favor of each county in the state for the amount to which each county is entitled." And the act further provides that: "All such amounts so paid to the several counties shall be paid into a special road improvement fund. Such fund shall be expended by the county receiving it exclusively in the construction and maintenance of roads, bridges, and culverts in such county. In the event that any county has not established such a fund its proportion of such fund shall be retained by the state until provision for such a road fund has been made, and it shall be then paid over to the county"; and, furthermore, that "the controller shall not draw such warrant in favor of any county which shall not have established such a road fund as is herein required or which shall be delinquent in its annual report to the state department of public works" as in said act required.

█ It will therefore be seen that there is a specific mandatory duty enjoined upon the Controller by the terms of said act to draw warrants on the state fund in favor of the counties for certain amounts, and that the only justification for a refusal to perform such duty is that the county has failed to comply with the conditions of said act as to the creation of the proper county road fund for the reception of the money and in making said reports. █ Admittedly, the County of San Benito has not defaulted in either of these requirements; and there is no statutory law expressly or by implication vesting authority in the Controller to suspend the operation of a mandatory legislative act and thus deprive a county of certain moneys to which it is

admittedly entitled, and which are designed to be used for a specified purpose, pending the settlement of a disputed indebtedness between the state and the county, arising under a statute entirely foreign to the particular one involved; and, manifestly, in the absence of such statutory authority he may not do so.

A similar question was presented in the case of *Posados* v. *City of Manila*, 274 U. S. 710 [71 L. Ed. 1127, 47 Sup. Ct. Rep. 704], recently decided by the supreme court of the United States, and the law as declared by the decision therein has direct application here. There the insular auditor of the Philippine Islands sought to enforce the settlement of an indebtedness claimed to be due the government from the city of Manila for the use of water by withholding from the city certain warrants in payment of the city's share of the internal revenue to which the city was entitled under the Philippine Administrative Code. In affirming the judgment of the supreme court of the Philippine Islands granting to the city a writ of mandate directing the auditor and the internal revenue collector to deliver said warrants to the city, the supreme court of the United States, speaking through Mr. Chief Justice Taft, said: "It is apparent from reading the foregoing sections (of the Administrative Code) that they are directions by statutory law as to the distribution of the collections made by the internal revenue collector, and that the share to be paid to the city of Manila is fixed thereby, and the exact figure can be ascertained mathematically. This requires no exercise of discretion, judicial or otherwise, after the total amount of the internal revenue receipts are known, and in this case there is no dispute as to that amount. It becomes the ministerial duty of the internal revenue collector to draw his warrant for the share of the city thus fixed by statute. It becomes the duty of the insular auditor, when such a warrant of the internal revenue collector is presented to him, after ascertaining that the amount for which it is drawn is in accord with the directions of the statute, to countersign the same. *Kendall* v. *United States*, 12 Pet. 524 [9 L. Ed. 1181]; *Wright* v. *Ynchausti*, 272 U. S. 640, 651, 652 [71 L. Ed. 454, 47 Sup. Ct. Rep. 229]. No matter what the power of the auditor may prove to be with refer-

ence to the settlement of accounts as between the city of Manila and the metropolitan water board, or what his power with reference to enforcing the settlement so reached by him, nothing in the laws of the Islands is disclosed to us which enables the auditor in the enforcement of such settlements to dispense with or to suspend the operation of positive law in reference to the course which shall be followed in the disposition by the internal revenue collector of the receipts from internal revenue collections which he is directed by the statute to pay the city. His duty is clearly set forth, and he has nothing to do but to comply with it, having ascertained exactly what the share of the city is under the foregoing provisions." And so here, there is a statutory distribution of the moneys collected by the state from the motor vehicle fuel taxes, and the proportionate share thereof to which each county is entitled is subject to mathematical ascertainment; therefore, when the amount is ascertained, the Controller has not the power to suspend the operation of said act, and it becomes his ministerial duty to draw and deliver his warrant for the amount fixed by the statute, irrespective of what his power and authority may prove to be relating to the settlement of other accounts.

Nor may the equitable powers of this court be invoked in a proceeding of this kind to aid defendant in accomplishing indirectly that which he may not do directly, namely, the withholding of the moneys admittedly due said county under the Motor Vehicle Fuel Act until there has been an adjustment and payment in full of the alleged indebtedness due the state from the county on the Sonoma State Home account, for the reason that in the absence of statutory authority the courts have no more power than the Controller to suspend the plain, mandatory provisions of a legislative act. Moreover, this is a special proceeding, and, as in the case of *Posados* v. *City of Manila, supra,* wherein it was said that the only question involved was "what should be done with the share of the collections made by the internal revenue collector under the sections of the administrative code," the only matter presented for determination here is what shall be done with the collections made by the state under the Motor Vehicle Fuel Act. The question, therefore, as to whether or not the county is indebted to the state for

the support of feeble-minded persons committed to the Sonoma State Home is one with which we are not here concerned.

Furthermore, this court, not being possessed of trial court powers, doubtless is without original jurisdiction, equitable or otherwise, to hear or determine the merits of the disputed indebtedness set forth in the special defense. As appears from the allegations of the special defense the state presented monthly claims against the county based upon said indebtedness which were by the board of supervisors rejected. Any adjudication of the merits of said rejected claims must therefore be obtained through the medium of an action at law (Pol. Code, sec. 4078), which affords either party a right of appeal from the judgment to be rendered therein. The original jurisdiction to hear and determine such an action is exclusively in a trial court.

Finally, it would appear that the two exclusive remedies provided for by section 2193 of the Political Code for the enforcement of the payment of state claims against counties for the maintenance of feeble-minded persons committed to the Sonoma State Home must be exercised by the state commission in lunacy and that neither is available to the State Controller. Said section declares that: " . . . the state commission in lunacy may require the county treasurer by writ of mandate to pay to the state treasurer upon an order of the controller all amounts found to be due the state . . . ," or that "said commission may in its discretion recover sums due from counties by presentation of claims against the board of supervisors. . . . " In view of the foregoing provisions, it would seem that in any event the subject matter of state claims arising under said section may not be resorted to by the Controller as a legal excuse for the refusal to perform the statutory duty imposed upon him by said act.

For the reasons hereinabove stated the demurrer to the answer is sustained and the peremptory writ of mandate will issue as prayed except as to damages, the statute having made no provision for such allowance.

Tyler, P. J., and Cashin, J., concurred.