[Civ. No. 6901. Third Dist. Oct. 27, 1942.]

FORREST J. MALASPINO, as Administrator, etc., Petitioner, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY et al., Respondents.

Charles P. Snyder and George F. Snyder for Petitioner.

Earl Warren, Attorney General, and Rose M. Sheehan, Deputy Attorney General, for Respondents.

SCHOTTKY, J. pro tem.—Harry B. Riley, as State Controller of the State of California, commenced an action in the Justice's Court of Sacramento Township, against the administrator of the estate of Theresa Guiffra, deceased, petitioner herein, to recover the sum of $896.13, upon a claim filed by the Department of Institutions against said estate, for the care and maintenance of an incompetent daughter of said deceased, in a state hospital. The administrator demurred to the complaint, which demurrer was overruled, an answer was filed, and, upon trial, the justice's court rendered judgment in favor of plaintiff. An appeal was taken to the Superior Court of Sacramento County on questions of law and fact, and, after trial, judgment was rendered in favor of plaintiff. Petitioner has filed in this court a petition for a writ of review, and seeks therein to have the judgment against him annulled, upon the ground that the superior court, "in rendering said judgment against petitioner acted without and in excess of the jurisdiction of said court and judge."

Petitioner contends that the State Controller had no legal capacity to sue, but that the Department of Institutions, under section 6658 of the Welfare and Institutions Code, had the exclusive right to commence such an action, and therefore, neither the justice's court nor the superior court, had jurisdiction to enter a judgment. He asserts that under section 6658 of the Welfare and Institutions Code, and the section immediately preceding it, the liability for the support of an insane person committed to a state hospital is created, and that the Department of Institutions has the exclusive right to commence an action to recover for such support.

Said section 6658 reads as follows:

"The Department of Institutions may in its own name bring an action to enforce payment for the cost of determining the insanity of any person and securing his admission into a State hospital when his estate or any person is liable for the same, or to recover for the use and benefit of any State hospital or for the State the amount due for the care, support, maintenance, and expenses of any patient or inmate therein, against any county, or officer thereof, or against any person, guardian, or relative liable for such care, support, maintenance, and expenses."

It will be noted that the section quoted states that the Department of Institutions *may* bring such an action, but we find no language in such section, or elsewhere in the Welfare and Institutions Code, that gives said department the exclusive right to commence the action. It must be borne in mind that the liability in question is one that is due to the State of California, and not to the Department of Institutions, and that what is here involved is merely the right to commence an action to recover the amount determined by the investigation of the Department of Institutions to be due to the State of California.

It is stated in section 433 of the Political Code that one of the duties of the State Controller is "to superintend the fiscal concerns of the state," and in subdivision 16 of said section it is stated that it is the State Controller's duty—

*"To direct and superintend the collection of all moneys due the state,* and institute suits in its name for all official delinquencies in relation to the assessment, collection, and payment of the revenue, and against persons who by any means have become possessed of public money or property and fail to pay over or deliver the same, and against all debtors of the state; of which suits the courts of Sacramento county have jurisdiction, without regard to the residence of the defendants;"

There is no inconsistency between these various sections. Section 6658 gives the Department of Institutions the right to maintain an action for such support, and section 433 of the Political Code empowers the State Controller, in line with his duty, "to superintend the fiscal concerns of the state," to commence an action to collect any and all moneys due to the state. Whether the action is commenced by the

Department of Institutions or by the State Controller, the State of California is still the real party in interest, and the liability is one due to the State. Before we would be justified in holding that the Department of Institutions alone had the right to commence an action to recover the amount due to the State in the instant case, it must appear clearly that said section 6658, *supra,* confers such exclusive right, and in our opinion, said section cannot reasonably be construed as taking away from the State Controller the right and duty conferred upon him by section 433 of the Political Code to bring suit for any moneys due to the State.

The petitioner contends that the case of *County of San Benito* v. *Riley,* 88 Cal.App. 131 [263 P. 349], is decisive of the issues here involved. In that case the county of San Benito petitioned for a writ of mandate in the District Court of Appeal, to compel the State Controller to deliver to said county certain state warrants for a sum representing the county's share of moneys collected by the State under the Motor Vehicle Fuel Act. [Stats. 1923, p. 571; Deering's Gen. Laws, 1937, Act 2964.] The State Controller, in his answer, did not deny that the county was entitled to warrants for the amounts, but interposed a special defense that the county had refused to pay an indebtedness due to the State under sections 2192 and 2193 of the Political Code, for the support of feeble-minded persons committed to the Sonoma State Home by the Superior Court of San Benito County, and in his prayer said State Controller asked that as a condition precedent to the issuance of a writ of mandate, the county of San Benito be required to pay to the controller the sums found by this court to be due from the county. The county's demurrer to said answer was sustained, and, in its opinion, the court pointed out that under the said Fuel Act it was the duty of the State Controller to draw his warrant in favor of each county for its proportion of the Motor Vehicle Fuel Fund, and that all said amounts should be placed in a special road improvement fund by the respective counties, and expended exclusively in the construction and maintenance of roads, bridges and culverts in such county, and the court said, at page 134:

". . . there is no statutory law expressly or by implication vesting authority in the Controller to suspend operation of a mandatory legislative act and thus deprive a county of certain moneys to which it is admittedly entitled, and which

are designed to be used for a specified purpose, pending the settlement of a disputed indebtedness between the state and the county, arising under a statute entirely foreign to the particular one involved; and, manifestly, in the absence of such statutory authority he may not do so."

The court further held that it was not possessed of trial court powers, and was therefore without jurisdiction, equitable or otherwise, to hear or determine the merits of the disputed indebtedness set forth in the special defense. The court then went on to say, at page 137:

"Finally, it would appear that the two exclusive remedies provided for by section 2193 of the Political Code for the enforcement of the payment of state claims against counties for the maintenance of feeble-minded persons committed to the Sonoma State Home must be exercised by the state commission in lunacy and that neither is available to the State Controller. Said section declares that: '. . . the state commission in lunacy may require the county treasurer by writ of mandate to pay to the state treasurer upon an order of the controller all amounts found to be due the state . . .' or that 'said commission may in its discretion recover sums due from counties by presentation of claims against the board of supervisors. . . .' In view of the foregoing provisions, it would seem that in any event the subject matter of state claims arising under said section may not be resorted to by the Controller as a legal excuse for the refusal to perform the statutory duty imposed upon him by said act."

Petitioner contends that this last quoted language of the District Court of Appeal is conclusive authority that the State Controller had no right to bring the action against him, and that the Department of Institutions had the exclusive right to bring the action. We are unable to agree with this contention. As already pointed out, we believe that section 433 of the Political Code would give the State Controller the right to bring the action, even though section 6658 of the Welfare and Institutions Code authorized the Department of Institutions to bring the action for the same liability. Furthermore, the language quoted was not necessary to the decision in the case, and if, by using the word "exclusive," the court intended to hold that the Controller could under no circumstances commence an action necessary to recover the moneys due from the state for the care of the feeble-minded,

then we must conclude that the court overlooked the plain provisions of section 433 of the Political Code, as the opinion makes no mention of said section. We have examined the briefs in said case, and find that section 433 of the Political Code was not called to the attention of the court by counsel for petitioner therein, as they based their argument entirely upon the two grounds hereinbefore mentioned.

This being a petition for a writ of review, in view of our conclusion that the State Controller had the authority to bring the action, and inasmuch as section 433, *supra,* gives the courts of Sacramento County jurisdiction of such actions, it is unnecessary to discuss some of the other contentions advanced by petitioner.

The judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied December 22, 1942.