STATE EX REL. PIERCE ET AL., APPELLANTS, *v.* GOWDY, COUNTY TREASURER, RESPONDENT.

(No. 4,900.)

(Submitted November 2, 1921. Decided January 11, 1922.)

[203 Pac. 1115.]

*Taxation — Statutes — "Bachelor's Tax Law" — Constitution — Taxing Power — Police Power.*

Taxation—"Bachelor's Tax"—Unconstitutionality.
   1. *Held*, that Chapter 261, Laws of 1921, levying a per capita tax of three dollars, in addition to a poll tax of two dollars for county purposes upon every male inhabitant of a given age who is not the head of a family, is invalid as in contravention of section 4, Article XII, of the Constitution, vesting the power to levy taxes upon persons and property of counties, cities, *etc.*, in the municipal authorities

but prohibiting the legislature from doing so. (MR. JUSTICE HOLLO-
WAY dissenting.)

Constitution—Provisions Mandatory and Prohibitory.
2. The rule prescribed by section 29, Article III, that the provisions
of the Constitution are mandatory and prohibitory, applies to every
part of the Constitution.

Same—Provisions Conclusive upon Legislature.
3. With reference to the subjects upon which the Constitution as-
sumes to speak, its declarations are conclusive upon the legislature.

Taxation—"Tax"—Definition.
4. A "tax" within the meaning of section 4, Article XII, of the
Constitution is an enforced contribution of money or other property,
assessed in accordance with some reasonable rule of apportionment by
authority of a sovereign on persons or property within its jurisdiction
for the purpose of defraying the public expense.

Same—Taxing Power—Police Power—Distinction.
5. The taxing power is exercised for the purpose of raising revenue,
while the police power under which a pecuniary imposition is made
by a sovereign upon inhabitants is exercised only for the purpose of
regulation and promotion of the public welfare.

Statutes—Constitutionality—Presumptions.
6. A statute will be presumed constitutional unless the contrary ap-
pears beyond a reasonable doubt.

Taxation—"Bachelor's Tax"—Revenue Measure—Not Exercise of Police
Power.
7. *Held,* that the "Bachelor's Tax Law" (Chap. 261, Laws, 1921), is
a revenue measure and not maintainable as an attempted exercise of
the police power of the state by the imposition of an exaction upon
county inhabitants for the protection of the public health, the public
morals or the public safety. (MR. JUSTICE HOLLOWAY dissenting.)

*Appeal from District Court, Flathead County; Chas. W.
Pomeroy, Judge.*

ACTION by the State of Montana, on the relation of H. S.
Pierce and another, against Nellie B. Gowdy, Flathead County
Treasurer. From an order refusing an injunction, plaintiffs
appeal. Reversed and remanded, with directions to issue writ.

Cause submitted on briefs of Counsel.

*Mr. Jess H. Stevens* and *Mr. B. J. McIntire,* for Appellants.

We contend that the title of said Chapter 261, ''Providing
a poll tax on males not the heads of families,'' is misleading,
and does not indicate that the said Chapter provided for two
poll taxes on such males, that is, a general poll tax of two
dollars and an additional poll tax of three dollars. (*State* v.

*Anaconda Copper Min. Co.,* 23 Mont. 498, 59 Pac. 854; *Mc-
Cormack Harvesting Co.* v. *Kolb,* 12 Okl. 1, 74 Pac. 367.)

This court had before it the question of the validity of a
poll tax in the case of *Pohl* v. *Chicago, M. & St. P. R. R. Co.,*
52 Mont. 572, 160 Pac. 515, in which the court states: "The
statute now under consideration is not more nor less than a
police regulation designed to carry into effect the will of the
people expressed in the constitutional provision above." And
in defining the police power, this court, in the case of *Herlihy*
v. *Donohue,* 52 Mont. 601, Ann. Cas. 1917C, 29, L. R. A. 1917B,
702, 161 Pac. 164, states: "The state, in the legitimate exercise
of its police power, may regulate or control every act and thing
within its jurisdiction which tends to subvert the government,
to injure the public, to destroy the morals of the people, or to
disturb the peace and good order of society." In what respect
a poll tax, or an additional poll tax, affects any of the fore-
going is not clear. But even though this court should affirm its
decision in the *Pohl Case,* surely the statute under considera-
tion cannot be upheld as to the additional poll tax provided
for therein.

It is generally held that poll taxes are subject to the require-
ment of uniformity. (26 R. C. L. 141; *Kansas City* v. *Whip-
ple,* 136 Mo. 475, 58 Am. St. Rep. 657, 35 L. R. A. 747, 38
S. W. 295; *State* v. *Ide,* 35 Wash. 576, 102 Am. St. Rep. 914,
1 Ann. Cas. 634, 67 L. R. A. 280, 77 Pac. 961.) A poll tax
cannot constitutionally be levied upon such of the male inhabi-
tants as fail to vote at the general election. (*Kansas City* v.
*Whipple,* 136 Mo. 475, 58 Am. St. Rep. 657, 35 L. R. A. 747,
38 S. W. 295.)

Chapter 261 is not a valid exercise of the police power. In
order to sustain legislative interference by virtue of the police
power, under either a statute or a municipal ordinance, it is
necessary that the Act should have some reasonable relation to
the subjects included in such power, and the law must tend,
in a degree that is perceptible and clear, toward the preven-
tion of some offense or manifest evil, or to the furtherance

of some object within the scope of the police power. The mere assertion by the legislature that a statute relates to the public health, safety or welfare does not in itself bring that statute within the police power of the state; for there must be obvious and real connection between the actual provisions of a police regulation and its avowed purpose, and the regulation adopted must be reasonably adapted to accomplish the end sought to be attained. (*State* v. *Redmon,* 134 Wis. 89, 126 Am. St. Rep. 1003, 15 Ann. Cas. 412, 14 L. R. A. (n. s.) 229, 114 N. W. 137; *Ex parte Drexel,* 147 Cal. 763, 3 Ann. Cas. 878, 2 L. R. A. (n. s.) 588, 82 Pac. 430; *State* v. *Loomis,* 115 Mo. 307, 21 L. R. A. 789, 22 S. W. 350; *Block* v. *Schwartz,* 27 Utah, 387, 101 Am. St. Rep. 971, 1 Ann. Cas. 550, 65 L. R. A. 308, 76 Pac. 22.)

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, for Respondent.

If the title of a bill is such as to give the members of the legislature, and the public in general, a fair conception of the subject being considered, as does the one in question, it sufficiently complies with the provision of section 23, Article V, of the Constitution. (*Jobb* v. *County of Meagher,* 20 Mont. 424, 51 Pac. 1034; *State* v. *Mitchell,* 17 Mont. 67, 42 Pac. 100; *Hotchkiss* v. *Marion,* 12 Mont. 218, 29 Pac. 821; *State ex rel. Olson* v. *Board of Control,* 85 Minn. 165, 88 N. W. 533; *Commonwealth* v. *Brown,* 91 Va. 762, 28 L. R. A. 110, 21 S. E. 357; *Allen* v. *Hopkins,* 62 Kan. 175, 61 Pac. 750; Sutherland on Statutory Construction, sec. 86.)

Appellants next contend that Chapter 261 is arbitrary and unreasonable, and violates one of their inalienable rights, and is, therefore, unconstitutional. Poll taxes are regarded as a lawful means of raising revenue for public purposes. Not being laid upon property, they are not within the constitutional requirements as to equality and uniformity or as to taxation by value, unless the principle of uniformity is violated by an arbi-

trary exemption of a certain class of persons from the tax. (37 Cyc. 766, 767; 26 R. C. L., sec. 115, p. 140.)

The poll tax is a legitimate means of raising the funds necessary for the care of the poor and destitute inhabitants of the several counties. (See *Pohl* v. *Chicago etc. Ry. Co.,* 52 Mont. 572, 160 Pac. 515; *Thurston Co.* v. *Tenino Stone Quarries,* 44 Wash. 351, 12 Ann. Cas. 314, 9 L. R. A. (n. s.) 306, 87 Pac. 634; *Bluitt* v. *State,* 56 Tex. Cr. 525, 121 S. W. 168; *Sawyer* v. *Alton,* 4 Ill. (3 Scam.) 127; *Short* v. *State,* 80 Md. 392, 29 L. R. A. 304, 31 Atl. 322; *Fairbault* v. *Misener,* 20 Minn. 396; *Elting* v. *Hickman,* 172 Mo. 237, 72 S. W. 700; *Salt Lake City* v. *Wilson,* 46 Utah, 60, 148 Pac. 1104; *Moose* v. *Board of Commrs.,* 172 N. C. 419, Ann. Cas. 1917E, 1183, 90 S. E. 441.)

Appellants assert that the levying of a poll tax is not within the police power of the state. The courts have found it almost impossible to lay down a definition of ''police power'' that will cover all cases. The power is admitted to be very broad and it has been said that it is a power that has always belonged to the states, never having been surrendered by them to the general government, nor directly restrained by the federal Constitution. Under it, each state is said to have the power to regulate the relative rights and duties of all persons within its jurisdiction for the convenience and good of the general public, so as to secure the general safety, public welfare, and the peace, good order and morals of the community. It has been said to be to the public what the law of necessity is to the individual, and its scope is as broad as the public welfare. (*State* v. *Mountain Timber Co.,* 75 Wash. 581, L. R. A. 1917D, 10, 135 Pac. 645.) It is the contention of the respondent that the law under consideration is solely for the public welfare. (*Cunningham* v. *Northwestern Imp. Co.,* 44 Mont. 180–212, 119 Pac. 554; *Ex parte Townsend,* 64 Tex. Cr. 350, Ann. Cas. 1914C, 814, 144 S. W. 628; *Noble State Bank* v. *Haskell,* 219 U. S. 104, Ann. Cas. 1912A, 487, 32 L. R. A. (n. s.) 1064, 55 L. Ed. 112, 31 Sup. Ct. Rep. 186 [see, also, Rose's U. S. Notes];

*Carr* v. *State,* 175 Ind. 241, 32 L. R. A. (n. s.) 1190, 93 N. E. 1071.)

MR. JUSTICE GALEN delivered the opinion of the court.

This appeal is from an order of the district court of Flathead county, refusing a writ of injunction. Appellants sought to [1] enjoin the county treasurer of Flathead county from collecting, or attempting to collect, poll taxes from either of them under the provisions of Chapter 261 of the Laws of 1921, commonly referred to as the "Bachelor's Tax Law." If the Act is valid, the appellant Howard K. Pierce, who is the head of a family, is subject to the payment of an annual poll tax of two dollars, and appellant Leonard E. Riebe, being unmarried and without dependents, must pay five dollars poll tax. It is required that such exactions shall be paid to the county treasurer, and credited to the poor fund of the county.

By section 1 of the Act attempt is made to amend section 2692 of the Revised Codes, 1907, to read as follows:

"Sec. 2692. Every male inhabitant of this state over 21 and under 60 years of age except paupers, insane persons and Indians not taxed, must annually pay a poll tax of two dollars ($2.00). *In addition to the foregoing poll tax of two dollars ($2.00), every such male inhabitant of this state who is not the head of a family, as hereinafter defined, must annually pay an additional poll tax of three dollars, ($3.00).*

"*The words 'head of a family' shall, for the purpose of this Act, be construed to mean any person having wholly dependent upon him for support, a wife, minor child, father, mother, brother, or sister and any such male person actually living with his wife.*"

The amendment is shown by the portions italicized; the other part of the section being *verbatim* the same language of the section before the passage of the Act. Section 2 of the Act is nothing more than a re-enactment of the provisions of section 2714 of the Revised Codes, providing that the proceeds of the

tax shall be paid to the poor fund of the county. And section 3 is the repealing clause.

Section 2692 of the Revised Codes was first enacted by the second legislative assembly, and appears as section 163, Laws of 1891, page 122. In consequence of an amendment of section 167, relating to compelling payment of poll taxes, made by Act of March 8, 1893, page 65, no reference being made to section 163, the Code commissioner evidently considered the latter section continued in force (sec. 3561, Pol. Code) by implication, and it was brought forward as section 3960 of the Political Code in 1895, and thence to the Revised Codes of 1907. It is unnecessary to determine whether it was properly carried forward as a part of the Code provisions, but it is noteworthy that the same subject matter was fully covered by subdivision 5 of section 4230 of the Political Code, adopted in 1895, as respects which the constitutional objections hereinafter stated have no application. As carried forward in the Revised Codes, it is section 2894, dealing with the powers of boards of county commissioners, subdivision 5 of which empowers them "to provide for the care and maintenance of the indigent sick, or the otherwise dependent poor of the county; erect and maintain hospitals therefor, or otherwise provide for the same; *and to levy the necessary tax* therefor, *per capita, not exceeding two dollars,* and a tax on property not exceeding one-fifth of one per cent, *or either of such levies when both are not required.*"

The constitutionality of the Act is questioned on several grounds, but one of which will be considered as determinative of the case, namely: Did the court err in not holding that the Act contravenes the provisions of section 5 of Article 10 of the state Constitution? That section reads as follows: "The several counties of the state shall provide as may be prescribed by law for those inhabitants, who, by reason of age, infirmity or misfortune, may have claims upon the sympathy and aid of society."

Were we able to limit our consideration of the Act to this specific objection, independent of other constitutional provisions,

we would have no difficulty in sustaining the Act; for it is clearly an attempt to carry out by provisions of law the obligation of the several counties to care for the poor. However, [2, 3] the provisions of the Constitution are mandatory and prohibitory (sec. 29 of Article III), and this rule applies to every part of the Constitution. (*State ex rel. City of Butte* v. *Weston*, 29 Mont. 129, 74 Pac. 415.) And its declaration with reference to the subjects upon which it assumes to speak are conclusive upon the legislature. (*In re Weston*, 28 Mont. 212, 72 Pac. 514.) So that of necessity we must read and consider the legislative limitation in the levy of taxes for county purposes.

Section 4 of Article XII reads as follows: "The legislative assembly shall not levy taxes upon the inhabitants or property in any county, city, town, or municipal corporation for county, town, or municipal purposes, but it may by law vest in the corporate authorities thereof powers to assess and collect taxes for such purposes."

The question at once arises as to whether the per capita [4] assessment attempted to be levied by the Act is a tax. We think it is for constitutional authority is clearly conferred to levy assessment against persons as well as their property.

Mr. Cooley says: "Taxes are defined to be burdens or charges imposed by the legislative power upon persons or property, to raise money for public purposes. The power to tax rests upon necessity, and is inherent in every sovereignty. The legislature of every free state will possess it under the general grant of legislative power, whether particularly specified in the Constitution among the powers to be exercised by it or not." (Constitutional Limitations, 7th ed., p. 678.)

As to what constitutes a tax we quote the following language, with approval, from 26 Ruling Case Law, pages 13, 14: "A tax is an enforced contribution of money or other property, assessed in accordance with some reasonable rule of apportionment by authority of a sovereign state on persons or property

within its jurisdiction for the purpose of defraying the public expense. The exercise of the power of taxation consists of two distinct processes—the one relating to the levying or imposition of the taxes on persons or property; the other to the collection of the taxes levied. The first is constituted of the provisions of law which determine or work out the determination of the persons or property to be taxed, the sum or sums to be thus raised, the rate thereof and the time and manner of levying and receiving and collecting the taxes. It definitely and conclusively establishes the sum to be paid by each person taxed or to be borne by each property specifically assessed, and creates a fixed and certain demand in favor of the state or subordinate governmental agency, and a definite and positive obligation on the part of those taxed. The second is constituted of the provisions of law which prescribe the manner of enforcing the obligation on the part of those taxed to pay the demand thus created. It is often very important to determine whether a particular pecuniary imposition is a tax or not because the power of taxation is restricted by constitutional limitations, different from those applicable to other governmental powers, and the constitutionality of a statute imposing a pecuniary charge may depend on whether such charge is a tax or not.''

''The police power must be distinguished from the taxing **[5]** power, and the distinction is this: The taxing power is exercised for the purpose of raising revenue, and is subject to certain limitations elsewhere considered, while the police power is exercised only for the purpose of promoting the public welfare, and, although this end may be attained by taxing or licensing occupations, yet the object must always be regulation and not the raising of revenue, and hence the restrictions on the taxing power do not apply.'' (12 C. J. 906.)

Capitation or poll taxes are generally regarded as a proper means for raising revenue for public purposes. (37 Cyc. 766.) And the supreme court of the United States has repeatedly held that direct taxes are limited to land and appurtenances

and taxes on polls or capitation taxes. (*Springer* v. *United States,* 102 U. S. 586, 26 L. Ed. 253; *Hylton* v. *United States,* 3 Dall. 171, 1 L. Ed. 556; *Veazie Bank* v. *Fenno,* 8 Wall. 533, 19 L. Ed. 482 [see, also, Rose's U. S. Notes].)

And in applying the provisions of our Constitution to the Act in question we are not unmindful of the doctrine repeatedly [6] announced by this court that a legislative enactment is presumed constitutional, unless the contrary appears beyond a reasonable doubt. (*State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516; and see *State ex rel. Bonner* v. *Dixon,* 59 Mont. 58–75, 195 Pac. 841, wherein many decisions of this court are collected.)

Nor do we overlook the decision of this court in the case of *Pohl* v. *Chicago etc. Ry. Co.,* 52 Mont. 572, 160 Pac. 515, directly holding that the imposition of such a per capita tax under the provisions of this very section of the Act (2692) before its attempted amendment amounts to a police regulation rather than a tax. That decision announces *dicta* merely, and the constitutional provisions herein applied were not considered as affecting the statute. There the Act was assailed as being violative of sections 2 and 9, Article I, of the Constitution of the United States, which declare that direct taxes, if laid, shall be apportioned among the states according to population; and with section 1 of the Fourteenth Amendment, which forbids any state to deprive a person of life, liberty or property without due process of law. Neither section 4 of Article XII of our Constitution nor its effect were considered, and the decision is not viewed by us as correct in so far as it holds such tax warranted as a police regulation.

There is nothing whatsoever in the title of the Act or in [7] the body thereof to indicate an intention on the part of the legislature to exercise the police power of the state in the fixing of this exaction from county inhabitants for the protection of the public health, the public morals or the public safety, and upon no basis of reasoning are we able to perceive how

the Act may be properly classified as an exercise of the police power. The police power derives its very existence from the rule that the safety of the people is the supreme law, justifying legislation upon matters pertaining to the public welfare, the public health, or the public morals. (*Ruhstrat* v. *People*, 185 Ill. 133, 76 Am. St. Rep. 30, 49 L. R. A. 181, 57 N. E. 41; 6 R. C. L. 242; Cooley's Constitutional Limitations, 7th ed., 837.)

There is nothing whatsoever embraced in either the title of the Act or the body thereof to indicate an intention to exercise the police power of the state and the Act itself expressly denominates the assessment as "a tax," and it must be conceded to have all the characteristics of a tax. It is a charge imposed by the legislature for purposes of revenue, and it is an enforced proportional contribution levied by the state for county purposes.

As further indicative that such imposition was intended as a tax, it should be noted that the parent statute (sec. 163, p. 122, Laws 1891), is embraced within a general enactment respecting revenue and taxation for state and county purposes under title "An Act Concerning Revenue."

We are of opinion that the object of section 4 of Article XII of our Constitution was to relegate to the several counties the whole subject of taxes for county purposes, and that thereby the legislature is denied authority to impose any tax on the inhabitants of a county for county purposes. (*San Francisco* v. *Liverpool & L. & G. Ins. Co.*, 74 Cal. 113, 5 Am. St. Rep. 425, 15 Pac. 380.) In view of what has been said it is not necessary to give consideration to the uniformity requirement of the Constitution. (Sec. 11, Art. XII.) Attempt being made by the Act to levy a per capita tax in fixed amount, to be collected by the several counties for county purposes, we must hold it to be in excess of the legislative power, and therefore void.

The cause is reversed and remanded, with directions to issue the writ.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICE REYNOLDS concur.

MR. JUSTICE HOLLOWAY ·dissents.

MR. JUSTICE COOPER: I concur. Under the title "Revenue and Taxation," the first part of section 1 of Article XII of the Constitution commands that the legislature *shall* levy a rate of assessment and taxation that shall be uniform, and that *shall* secure a just valuation for taxation of all property. It then provides that the legislative assembly *"may also* impose a license tax, both upon persons and upon corporations doing business in the state." If the statute in question were leveled at the property of the person, it would be offensive to the first part of the section because of its obvious lack of uniformity in application. If the imposition was intended as a license, it should point to persons "doing business in the state" alone. The Act, however, departs from the authority thus delegated, and singles out every "male inhabitant who is not the head of a family," without taking into account his ability to pay; or the fact that he may, or may not, be "doing business in the state," and obliges him to pay an assessment he may be wholly unable to pay. The makers of the Constitution certainly did not intend that oppressive burdens should be thus imposed. The statute is also, in a sense, a punitory measure, because it reaches individuals who, for physical reasons, and perhaps many others, may not be the "head of a family" within its meaning.

While it may be said that the license tax referred to in the last sentence of section 1, Article XII, is not governed by the uniformity rule, because it controls only licenses (*State ex rel. Sam Toi* v. *French,* 17 Mont. 60, 30 L. R. A. 415, 41 Pac.

1078), I am not prepared to affirm that all legislation imposing licenses upon business as a police regulation can go so far as to deprive the citizen of his property without due process of law, or to deny to him his day in court. The mandatory and prohibitory declarations found in the Constitution are perhaps enough to shield the individual from all illegal exactions.

The police power is an attribute of sovereignty for the regulation of persons, natural and artificial, in all matters relating to the public health, the public morals and the public safety (*Aetna Fire Ins. Co.* v. *Jones,* 78 S. C. 445, 125 Am. St. Rep. 818, 13 L. R. A. (n. s.) 1147, 59 S. E. 150), and unless its assumption is to prevent a manifest evil, or to insure the public welfare, its proper exercise may be a matter for serious debate (22 Am. & Eng. Ency. of Law, p. 938).

Necessary as it undoubtedly is to raise revenue sufficient for the maintenance of the state, the authority must be exercised with delicate caution and within the precise limits found in the fundamental law which creates the power and defines its extent. The pressing needs of the state are not to be satisfied at the expense of guaranties indispensable to the constitutional government of a free people.

For the reasons given by Mr. Justice GALEN, the statute is also completely out of harmony with section 4 of Article XII, and unconstitutional.