LINDEEN, Respondent, v. MONTANA LIQUOR CONTROL BOARD, et al., Appellants.

No. 8907

Submitted May 9, 1949. Decided June 18, 1949.
Dissenting Opinion Amended July 11, 1949.
207 Pac. (2d) 947

Arnold H. Olsen, Attorney General, Charles V. Huppe, Assistant Attorney General, Wesley W. Wertz, Special Assistant Attorney General, for appellants. Mr. Huppe and Mr. Wertz argued the cause orally.

Mr. J. F. Emigh, Butte, Mr. W. D. Murray, Butte, for respondent. Mr. Emigh argued orally.

Mr. William A. Brown, Helena, Messrs. Truman G. Bradford and P. J. Gilfeather, Great Falls, Messrs. Desmond J. O'Neil, Glendive, Jess L. Angstman, Havre, Fred W. Schilling, Missoula, W. B. Leavitt, Miles City, J. R. Wine, Jr., and David R. Smith, Helena, Floyd C. Fluent, Butte, Amici Curiae.

PER CURIAM.

This is an action to enjoin the Montana Liquor Control Board from collecting, for the use and benefit of counties, cities and towns, a six percent sales tax on the retail selling price of liquor delivered or sold in the state pursuant to the provisions of Chapter 15, Laws of 1949.

The complaint charges that the legislation is violative of prohibitory provisions of Section 4 of Article XII and of the manda-

tory provisions of Section 5 of Article XVI of the Constitution of Montana. An order to show cause issued on the filing of the complaint. Defendants appeared by interposing a motion to quash the order and a general demurrer to the complaint. Upon the denial of the motion and demurrer defendants elected to stand upon same and judgment was entered for plaintiff. From that judgment defendants have appealed.

The Constitution of Montana prohibits the state legislature from levying taxes upon the inhabitants or property in this state for purely local county, town or municipal purposes.

Section 4 of Article XII of the Constitution provides: "The legislative assembly shall not levy taxes upon the inhabitants or property in any county, city, town, or municipal corporation for county, town, or municipal purposes * * *."

The provision is mandatory and prohibitory, sec. 29, Art III, Const., and in its construction the court is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted * * *." Sec. 10519, R. C. M. 1935.

In violation of the prohibition so imposed by Section 4 of Article XII, supra, the Thirty-first Legislative Assembly in the enactment of Chapter 15, Laws of 1949, assumed to authorize and direct the Montana Liquor Control Board to charge, receive and collect a tax of six percentum (6%) of the retail selling price on all liquor sold or delivered in this state, such retail selling price to be computed by adding to the cost of liquor the state mark-up as designated by the board. The Act further provides that the board shall retain the amount of such six percentum tax so received in a separate account and that it "shall apportion said *tax* to the treasurers of the counties according to the amount of liquor sold by said board to *the purchasers in each county*," and that after apportioning the funds to the incorporated cities and towns, "the remainder *shall be placed in the general fund of his county*." (Emphasis supplied.)

Thus the apportionment is to be made according to the inhabitants purchasing liquor in each county, each of whom is re-

quired to pay the tax at the time he makes his purchase, such tax being added to the cost of his liquor.

There is no limitation on the use the counties, cities and towns may make of the tax so collected. The tax is not a license fee required of persons "doing business in the state" but it is a sales tax imposed upon "the inhabitants" of the various counties, cities and towns buying liquor.

Purchasing liquor for one's own consumption or to slacken or quench the thirst of a companion does not constitute "doing business in the state" and the tax so imposed may not be considered as a license imposed upon the right to do business.

Every inhabitant who purchases liquor in this state must pay the tax despite the plain and simple language of section 4 of Article XII of the Constitution which says the "legislative assembly shall not levy taxes upon the inhabitants or property in any county, city, town, or municipal corporation for county, town, or municipal purposes * * *." The theory behind this constitutional provision is the preservation to the people of the principle of local self-government,—"Home Rule,"—which is fundamental in our American political institutions.

In State ex rel. Gerry v. Edwards, 42 Mont. 135, 145, 146, 111 Pac. 734, 737, 32 L. R. A., N. S., 1078, Ann. Cas. 1912A, 1063, the court quoted with approval from Rathbone v. Wirth, 6 App. Div. 277, 40 N. Y. S. 535, wherein the Supreme Court of New York in turn quotes with approval from Black on Constitutional Law, section 131, the following: "The principle of local self-government is regarded as fundamental in American political institutions. It means that local affairs shall be decided upon and regulated by local authorities, and that the citizens of particular districts have the right to determine upon their own public concerns without being controlled by the general public or the state at large. For this purpose municipal corporations are established and are invested with rights and powers of government subordinate to the general authority of the state, but exclusive within their sphere. 'It is axiomatic that the management of purely local affairs belongs to the people

concerned, not only because of being their own affairs, but because they will best understand and be most competent to manage them. The continued and permanent existence of local government is therefore assumed in all the state Constitutions, and is a matter of constitutional right, even when not in terms expressly provided for. It would not be competent to dispense with it by statute.' The institution of local self-government is not an American invention, but is traditional in England, and is justly regarded as one of the most valuable safeguards against tyranny and oppression. It is but an extension of this idea that the government of the United States should be intrusted with only such powers and rights as concern the welfare of the whole country while the individual states are left to the uncontrolled regulation of their internal affairs.''

Again in State ex rel. Gerry v. Edwards, supra, 42 Mont. at pages 147-150, 111 Pac. at page 737, this court said: ''In People ex rel. LeRoy v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103, the Supreme Court of Michigan asserts the inherent independence of the cities of that state in matters of purely local concern. The question of the exercise of the taxing power was not directly involved. The Constitution of Michigan then did not in express terms limit the authority or control of the Legislature over cities, but the eminent members of that court, Cooley, Campbell, Christiancy, and Graves, held that there was implied in the Constitution the right of the inhabitants of a city to local self-government with respect to matters of purely local concern. In People ex rel. Board of Park Commissioners v. Common Council of Detroit, 28 Mich. 228, 15 Am. Rep. 202, the validity of an act of the Legislature creating a park board for the City of Detroit, naming the members and defining the duties and powers of the board, was in question. Among others, the board was given the power to purchase land for park purposes, and, upon certifying the amount necessary to make such purchases to the council, the council was required to provide the money by the issuance and sale of city bonds. Because of the fact that in the selection of the board the people of the city did not have any voice, because

the city council was not given any discretion in the matter of raising the funds for the board, and because of the fact that the exercise of such authority by the Legislature would destroy the right of the residents of the city to local self-government, the Supreme Court of Michigan refused to compel the city council to furnish the funds demanded by the board, and in doing so held that the Act of the Legislature was unconstitutional. These two decisions by the Michigan court are everywhere cited as leading cases upholding the theory of local self-government. * * *

"It will thus be seen that the theory of local self-government in matters of purely private concern as distinguished from the theory of absolute legislative control, was adopted in this state as early as 1897, and we think rightly so. We must assume that the framers of our Constitution had a purpose in view in denying to the legislature the right to levy taxes upon the property or people of any city for city purposes; and it cannot be imagined that they intended that what they had declared could not be done directly could nevertheless be accomplished by indirection. * * *

"In treating of our system of government, Bryce, in his work entitled 'The American Commonwealth' (volume 2, p. 611), says: 'Nothing has more contributed to give strength and flexibility to the government of the United States, or to train the masses of the people to work their democratic institutions, than the existence everywhere in the northern States of self-governing administrative units, such as townships, small enough to enlist the personal interest and be subject to the personal watchfulness and control of the ordinary citizen. Abuses have indeed sprung up in the cities, and in the case of the largest among them have become formidable, partly because the principle of local control has not been sufficiently adhered to. Nevertheless the system of local self-government as a whole has been not merely beneficial, but indispensable, and well deserves the study of those who in Europe are alive to the evils of centralization, and perceive that those evils will not necessarily diminish with

a further democratization of such countries as Britain, Germany and Italy'.''

A tax by any name is just as onerous for the inhabitants upon whom it is impressed and especially so when the taxpayer and his local authorities have been denied and deprived of their constitutional right to say ''Yea'' or ''Nay'' to the impressment of the tax. The imposition of the six percentum sales tax on liquor to be used for county, town or municipal purposes is squarely within the prohibition of section 4 of Article XII of our Constitution and it is crystal clear that such provision of the Constitution is not limited to taxes upon property for by its express language the legislature is prohibited from making the levy upon the inhabitants in any county, city, town or municipal corporation as well as upon their property for county, city, town or municipal purposes.

Section 7, Article 10 of the Constitution of Colorado is substantially the same as section 4 of Article XII of the Constitution of Montana. In Walker v. Bedford, 93 Colo. 400, 26 Pac. (2d) 1051, 1052, the court considered a statute imposing an additional fee for registration of motor vehicles, the proceeds from which should be paid to county treasurers for the ''County Emergency Relief Fund'' and held the statute to be unconstitutional.

In State ex rel. Pierce v. Gowdy, 62 Mont. 119, 203 Pac. 1115, 1117, this court considered a statute imposing a poll tax upon male inhabitants, the proceeds whereof were to be paid into the poor fund of the county. The statute was held invalid as violative of section 4, Article XII of the Constitution. In determining what constitutes a tax the court quoted with approval from 26 R. C. L. 13 and 14 and then said: ''There is nothing whatsoever embraced in either the title of the act or in the body thereof to indicate an intention to exercise the police power of the state and the act itself expressly denominates the assessment as 'a tax' * * *.'' The quoted statement applies with equal force to Chapter 15, Laws of 1949, supra. In the Gowdy case, supra, the court further said: ''We are of the opinion that the object

of section 4 of article 12 of our Constitution was to relegate to the several counties the whole subject of taxes for county purposes, and that thereby the Legislature is denied authority to impose any tax on the inhabitants of a county for county purposes.'' See also State ex rel City of Bozeman v. Police Court, 68 Mont.. 435, 219 Pac. 810; People ex rel. LeRoy v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103. Compare: State ex rel. Wyatt v. Ashbrook, 154 Mo. 375, 55 S. W. 627, 48 L. R. A. 265, 77 Am. St. Rep. 765.

Section 12, Article XI of the Constitution of California is substantially the same as Section 4, Article XII of the Constitution of Montana, but the California Constitution has no provision like that set forth in the last sentence of Section 1, Article XII of the Montana Constitution. The legislature of California enacted a statute which imposed a privilege tax on owners of registered motor vehicles and provided that one percent thereof should be apportioned to the department of motor vehicles for administrative purposes and that 25% of the remainder of the fund is appropriated to the cities and counties for law enforcement and the regulation and control and fire protection of highway traffic. In considering the California statute in City of Los Angeles v. Riley, 6 Cal. (2d) 621, 59 Pac. (2d) 137, 138, the California court said: ''There can be no doubt that the prohibitions of this section (sec. 12, Art. XI) apply to license and privilege taxes, as well as to property taxes.'' (Citing cases.) However, the statute was held valid by reason of the provisions therein that such funds collected should be used for the purposes of ''law enforcement and regulation and control and fire protection of highway traffic,'' which purposes were held to be ''state in character, within the meaning of the above constitutional provision.''

Chapter 15, Laws of 1949, supra, places no such limitation in the use of the money to be collected through the six per cent. sales tax on liquor and therefore may not be sustained on the grounds stated by the California court in City of Los Angeles v. Riley, supra. People v. Martin, 60 Cal. 153, is here in point and

holds unconstitutional a statute most similar to Chapter 15, Laws of 1949, supra.

Appellants place much reliance upon this court's decision in State v. Camp Sing, 18 Mont. 128, 44 Pac. 516, 32 L. R. A. 635, 56 Am. St. Rep. 551, and State v. Silver Bow Refining Co., 78 Mont. 1, 252 Pac. 301.

The Camp Sing case, supra, involved a license tax imposed upon *the business* of running a laundry, sec. 2440, R. C. M. 1935, and State v. Silver Bow Refining Co. case, supra, involved a statute, sec. 2381 to 2396, Pol. Code of 1921, as amended by Chapter 150, Laws of 1923, imposing a license tax upon *the business* of running a manufacturing plant, refining, producing and selling gasoline and distillate and by section 2392 as amended, *limiting* the use of such funds to state purposes as did the California statutes construed in City of Los Angeles v. Riley, supra.

These cases, as well as the case of State v. Driscoll, 101 Mont. 348, 54 Pac. (2d) 571, sustain the license imposed by the statutes involved under the provision set forth in the last sentence of Section 1 of Article XII of the Constitution of Montana, but do not uphold the tax levied in violation of the provisions of Section 4 of Article XII of our Constitution.

Such cases are therefore readily distinguishable from the case at bar where in violation of the express prohibition of Section 4 of Article XII of the Constitution of Montana the legislature has assumed to authorize the state to levy a sales tax upon inhabitants for the privilege of purchasing and using liquor and then assumes to authorize the state to turn over to the various counties, cities and towns for their own unrestricted and local use the moneys so exacted by the state.

The legislative assembly must not only know but it must observe the prohibitions and limitations which the people of this state have seen fit to impose upon such branch of the government by their ratification of our state Constitution. The 1949 legislative assembly disregarded and violated the provisions of Section 4 of Article XII of the Constitution in the enactment of that portion of Chapter 15, Laws of 1949, pertaining to the six

percent sales tax on the retail selling price of liquor and such provisions are void as the district court correctly held. The judgment is affirmed.

MR. JUSTICE ANGSTMAN (dissenting):

This court as early as 1896 held that Section 4 of Article XII of the Constitution does not apply to license taxes. State v. Camp Sing, 18 Mont. 128, 44 Pac. 516, 521, 32 L. R. A. 635, 56 Am. St. Rep. 551. In that case 70% of the license tax imposed by the legislative act there in question went to the county and the balance to the state.

The court in speaking of the words "inhabitants" and "property" used in Section 4, Article XII said: "While these two words are used, the subject-matter is the same. And if the section refers, as we have endeavored to show that it does, to taxation of property, it was not important that the section uses the word 'inhabitants' as well as 'property,' for the result is the same, and the taxation referred to meant a property tax; that is to say, a tax upon a person, levied upon the basis of the property owned by him."

The same question arose with reference to the gasoline license tax, being Chapter 186, Laws of 1925, under the provisions of which 55% of the money received therefrom was distributed to the counties.

On the authority of State v. Camp Sing the gasoline license tax law was held not to violate Section 4, Article XII of the Constitution. State v. Silver Bow Refining Co., 78 Mont. 1, 252 Pac. 301. The attempt in the majority opinion to draw a distinction between the Silver Bow Refining Company case and this case on the ground that the former imposes a tax upon the business of running a manufacturing plant, refining, producing and selling gasoline and distillate is simply playing with words. Everyone knows that the gasoline license tax is actually paid by the one who drives into the filling station and buys gasoline for use in propelling vehicles over the highways.

Likewise, the Act in question here imposes the tax upon the

ones only who buy liquor from the state. But like the gasoline license tax, when liquor is bought for resale the tax is actually passed on to the ultimate consumer.

Both stand on exactly the same footing.

The majority opinion asserts that the Camp Sing and the Silver Bow Refining Co. cases sustain the license imposed by the statutes under the last sentence of Section 1, Article XII of the Constitution, but not under Section 4, Article XII. The majority are in error in that statement. The opinion in both of those cases sustained the Acts in question as against the contention that the statutes violated Section 4 of Article XII.

Idaho has a similar constitutional provision. It reads: "The legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may by law invest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation." Sec. 6, Art. 7. The Idaho constitution also authorizes a license tax as does ours. It also unlike ours authorizes a per capita tax. Sec. 2, Art. 7.

The Supreme Court of Idaho cited and quoted from the Camp Sing case and held that its section 6 of Article 7 applies only to property or ad valorem taxes and did not apply to occupation or privilege taxes. Idaho Gold Dredging Co. v. Balderston, 58 Idaho 692, 78 Pac. (2d) 105.

Oklahoma takes the same view. Trustees', Executors' & Securities, Ins. Corp. v. Hooton, 53 Okl. 530, 157 Pac. 293, L. R. A. 1916E, 602.

In State ex rel. Pierce v. Gowdy, 62 Mont. 119, 203 Pac. 1115, this court held that Section 4 of Article XII of our Constitution prohibits the state from levying a per capita or poll tax, the proceeds of which shall be paid to the counties and credited to the poor fund. I think, however, that the statute involved in the Gowdy case is different in principle from that here involved.

The per capita tax involved in the Gowdy case was a direct tax upon the inhabitants of the county as such. Here the tax is imposed not against the inhabitants as such but only if they

choose to exercise the privilege of buying liquor. Likewise the tax here involved is imposed upon everyone who buys liquor whether he be an inhabitant or not.

It should be noted too that the statute involved in the Gowdy case specifically provided that the funds should be credited to the poor fund of the counties. Under Section 5 of Article X of our Constitution the obligation to care for the poor is expressly imposed upon the counties. Hence the tax there under consideration was limited in its use to a function provided by the Constitution to be local.

That too was true in Walker v. Bedford, 93 Colo. 400, 26 Pac. (2d) 1051 (a four to three decision) relied upon in the majority opinion.

"In its modern sense an excise tax is any tax which does not fall within the classification of a poll tax or a property tax, and embraces every form of burden not laid directly upon persons or property." 51 Am. Jur., Taxation, sec. 33, p. 61, and cases cited therein.

In California it has been held that a similar constitutional provision applies to license and privilege taxes as well as to property taxes. City of Los Angeles v. Riley, 6 Cal. (2d) 621, 59 Pac. (2d) 137, and see San Francisco v. Liverpool & L. & G. Inc. Co., 74 Cal. 113, 15 Pac. 380, 5 Am. St. Rep. 425; ex parte Schuler, 167 Cal. 282, 139 Pac. 685, Ann. Cas. 1915C, 706. The ·California decisions are of course entitled to respectful consideration but are not controlling in the face· of decisions of our own court to the contrary. But California sustains license taxes when a part of the proceeds goes to cities or counties when the act specifies the purpose of the funds and when the purpose is at least partially a state purpose. Bacon Service Corp. v. Huss, 199 Cal. 21, 248 Pac. 235; City of Los Angeles v. Riley, supra.

The Act in question here can be sustained even under the California rule. The Constitution prohibits a state levy "for county, town, or municipal purposes."

How can it be said that the moneys provided by Chapter 15, ·

Laws of 1949, will be used for county, town or municipal purposes exclusively?

"It is well settled * * * that where the project has a state purpose, it is immaterial that in other respects it is local in nature." City of Los Angeles v. Post War Public Works Review Board, 26 Cal. (2d) 101, 156 Pac. (2d) 746, 754.

In City of Los Angeles v. Riley, 6 Cal. (2d) 621, 59 Pac. (2d) 137, the court had before it a license tax law imposing a tax of one and three-quarters per cent. of the value of each vehicle used on the public highways. A certain percentage of the receipts were apportioned to the cities "for law enforcement and regulation and control and fire protection of highway traffic * * *." The Act also allocated a certain percentage of the receipts to counties and cities "without restriction as to use." The Act as a whole had previously been upheld. Ingels v. Riley, 5 Cal. (2d) 154, 53 Pac. (2d) 939, 941, 103 A. L. R. 1.

The court in City of Los Angeles v. Riley, supra, said:

"It, therefore, follows that if the purposes enumerated in the statute are 'local' or 'municipal' purposes, as distinguished from 'state' purposes, the statute, to that extent, would be invalid.

"What constitutes a local and what a state purpose is a question not always free from doubt. See annotation, 46 A. L. R. 609. There are some functions performed by cities that are both local and state in nature. City of Sacramento v. Adams, 171 Cal. 458, 153 Pac. 908; City of Oakland v. Garrison, 194 Cal. 298, 228 Pac. 433. The constitutional provision above quoted does not prohibit state taxation for a state purpose, even though, under some circumstances, the purpose could also be local. To some extent the spheres of operation of the two overlap. In the present case, the purposes designated in the statute are 'law enforcement and the regulation and control and fire protection of highway traffic.' There cannot be any reasonable doubt but that those purposes are state in character, within the meaning of the above constitutional provision. In Bacon Service Corp. v. Huss, 199 Cal. 21, 40, 248 Pac. 235, 243; in passing on the valid-

ity of the allocation of certain funds to counties for highway purposes, as one ground of its opinion, it was held 'The license taxes here imposed by the legislature are in furtherance of a state purpose for the maintenance of state highways and to extend aid in the maintenance of county highways.' See, also, County of San Benito v. Riley, 88 Cal. App. 131, 263 Pac. 349. It has been held that law enforcement, in relation to traffic on the streets of a city, is a state affair. Ex parte Daniels, 183 Cal. 636, 192 Pac. 442, 21 A. L. R. 1172. In that case, it was held that while the regulation of traffic upon the streets of a city is of special interest to the people of the municipality, nevertheless, such regulation was a state and not a municipal affair. See, also, People v. County of Marin, 103 Cal. 223, 37 Pac. 203, 26 L. R. A. 659. Under such circumstances, it must be held that the purposes enumerated in the statute are state purposes and that the provision of the Constitution here involved is not violated by the allocation of these funds to the cities and to the cities and counties. It seems quite clear that if 'law enforcement and the regulation and control * * * of highway traffic' are state purposes, as held in the above cases, then 'fire protection of highway traffic' is also a state purpose.' '

Here the Act does not state the purpose for which the funds are to be used. The fact is well known, however, that the sale of liquor creates police and law enforcement problems, all of which cast regulatory burdens upon local authorities almost exclusively. Yet problems of regulating traffic in liquor and consequent law enforcement problems are state purposes going even to the matter of the safety of the state highways.

It is no answer to say that the money allocated to the local authorities may not in fact be used in any way to regulate or control the liquor traffic or for law enforcement. The fact is that if it is not used for either of those purposes it will release other local funds for those purposes and the result is the same. Chapter 15 is merely a device to enable local authorities to carry the financial burden of caring for police and law enforcement problems arising from the sale of liquor which otherwise will be

saddled upon the property owners in the cities and counties in the form of ad valorem taxes. It is not a strictly local purpose. Nor is it any answer that there is no showing that all of the proceeds of the tax or the equivalent in dollars and cents will be used by the counties or cities for a purpose in which the state is interested. The presumption is that the statute is valid and that the money will be so used. The invalidity of the statute will be declared only when it appears beyond a reasonable doubt to be in conflict with some constitutional provision. This rule is so fundamental that citation of authority is unnecessary. A late case so declaring is Mulholland v. Ayers, 109 Mont. 558, 99 Pac. (2d) 234.

I think Chapter 15 does not conflict with section 4, Article XII of the Constitution. For more than 35 years section 5127, R. C. M. 1935, has been in effect, which allocates license fees collected by the state auditor to the cities and towns for the use of fire department relief associations and though the validity of the Act was questioned by such able lawyers as Walsh, Nolan and Scallon and E. C. Day, Equitable Life Assur. Co. v. Hart, 55 Mont. 76, 173 Pac. 1062, its validity on the ground here claimed was not ever questioned. If Chapter 15, Laws of 1949, violates section 4, Article XII, then section 5127 is likewise invalid. I think both are valid.

My associates have stressed the "Home Rule" doctrine. As an abstract legal question I agree with the principle of "Home Rule." I fail to see where it sheds any light on the question before us. Either Chapter 15, Laws of 1949, violates section 4 of Article XII of the Montana Constitution or it does not. It seems to me that discussion of the "Home Rule" doctrine when dealing with the subject of intoxicating liquors as here may have far reaching consequences.

Do the majority members of the court in the per curiam opinion imply that henceforth the cities and counties must be consulted before state liquor stores may be established and maintained therein by the state? Until now the state through the legislative assembly has commanded that the liquor control board

"shall establish and maintain at the county seats and such other places as the board deems advisable, one or more stores to be known as 'state liquor stores,' for the sale of liquor * * *." Sec. 2815.69, R. C. M. 1935, as amended by Chapter 30, Laws of 1937, and Chapter 237, Laws of 1947, and as last amended by Chapter 162, Laws of 1949.

Until now it has been supposed that the liquor control board had full control and authority over the liquor traffic in the state except that county option was provided for in section 2815.96. Is it now to be understood that cities under the Home Rule doctrine may determine for themselves whether liquors shall be sold therein and if so by whom?

And does the "Home Rule" doctrine permit the counties to exclude the sale of liquor therein at any time or must they express themselves no oftener than two years as provided by section 2815.101?

I see no occasion for a discussion of these interesting questions in this case.

Finding no basis for condemning Chapter 15, I think the judgment appealed from should be reversed.

MR. JUSTICE METCALF:

I concur in the foregoing dissenting opinion of Mr. Justice Angstman.

Rehearing denied July 8, 1949.